Roe v. Meding.

MADELINE E. ROE et al., appellants,

*v.*

CHARLES E. MEDING, receiver of the Butler Silk Manufacturing Company, respondent.

1. The fourth section of the Chattel Mortgage act of May 2d, 1885, applies not alone to "judgment creditors," but to all creditors of the mortgagor.

2. Under the said fourth section, unless the mortgagee takes possession or records his mortgage immediately, his mortgage is postponed as to all creditors, whether they became such before or after the mortgage is recorded or possession taken.

3. Immediate possession or immediate recording means as soon as may be by reasonable diligence and dispatch under the circumstances of the case.

4. The ninth section of the act of 1885 has a twofold purpose : *First*, it changed the previously-existing law requiring a mortgage to be refiled, by providing that when once recorded according to the act, it should be valid until canceled ; *second*, it enables the mortgagee, who fails to record his mortgage immediately, to preserve his lien as against all persons who become creditors of the mortgagor after the mortgage is actually recorded, and in that respect puts him on the same footing with one who purchases or takes a mortgage after the prior mortgage is recorded.

On appeal from a decree advised by Vice-Chancellor Pitney, in *Meding* v. *Roe*, who delivered the following opinion.

Bill by Charles E. Meding, as receiver of the Butler Silk Manufacturing Company, an insolvent corporation, to declare

Roe v. Meding.

void a chattel mortgage upon its plant held by Madeline A. Roe and one Todd. Decree granted.

This bill is filed by a receiver of an insolvent corporation, appointed by this court, against a party holding a mortgage upon the chattels of the corporation. Its object is to obtain a decree of this court declaring the mortgage void. The complainant bases his equity on four grounds—*First*, that the mortgage was not executed in pursuance of authority for that purpose given by the board of directors; *second*, that it was purposely withheld from the records for several months after it was executed, and, indeed, until the day before the application for the appointment of a receiver was made to a judge of this court; *third*, that such withholding from the records was done by virtue of an agreement between the parties for the purpose of defrauding creditors; and, *fourth*, that the affidavit was insufficient.

There is no dispute as to the facts. They are as follows: The insolvent corporation, the Butler Silk Manufacturing Company, was organized under the General Corporation act on the 14th of February, 1889, by Richard V. Butler, Abram Fardon and James Huntoon, all of Paterson. Its object was the manufacturing of silk, and its place of business was Paterson. Huntoon was merely a nominal stockholder, and never took any part in the affairs of the company. They were managed, as long as it existed, by Butler and Fardon. Butler was president, and attended to the manufacturing department, and Fardon was secretary and treasurer, and attended to the financial department. He was also teller in a national bank at Paterson. In the latter part of the year 1892 the corporation was largely in debt, and in fact insolvent. Its financial condition in this respect was concealed from its creditors, and statements made and exhibited to them showing that it had a large surplus. About that time the defendant Miss Madeline Roe and her brother, Augustus C. Roe, who were cousins of both Butler and Fardon, became entitled to a considerable sum of money—nearly $10,000—by the death of their mother; and Augustus, who seemed to be somewhat helpless, was thrown out of a home and employment. In this situation of affairs the defendant Madeline Roe applied

to her cousin, Butler, to give a position to her brother, as employe, in the Butler silk mill. He agreed to do so provided she and her brother would loan the corporation the small fortune which they were about to receive, to enable it to increase its machinery and plant, and thereby create a need of an additional man in the works, and proposed to give them a chattel mortgage to secure them. Under this arrangement, Miss Roe began paying the money that she received from her mother's estate over to the corporation as fast as it came in to her, and also borrowed from her brother's trustee his share, and paid that over to it, upon the understanding that she was to have a chattel mortgage upon the plant for the whole. In fact, that mortgage was prepared in December, but was not executed until after the last payment was made, which was some time in April, 1893, when Miss Roe, by adding her own savings from her labor for years to the money she received from her mother's estate on her own and her brother's account, made up the sum to an even $10,000. To secure this sum the chattel mortgage in question was executed. It bears date on the 9th of May, 1893, and was executed on that day by Butler, as president of the company. Miss Roe made the necessary affidavit on the 18th of May, 1893. The mortgage was prepared and the business transacted by Mr. J. H. B., a real estate agent and conveyancer in Paterson, who occupied confidential relations towards Mr. Butler. Neither Butler nor Fardon was present when Miss Roe made the affidavit. After it was made, Miss Roe said to J. H. B.: "You understand, Mr. B., that this mortgage is not to be recorded until I send you word myself?" And she says that he (B.) answered: "I think so, Miss Roe." And she says that she gave this direction to Mr. B. because Mr. Butler had said to her, when the mortgage was ready for execution, that he would prefer, for business reasons, that she would not record it; but that, as she was a woman, if at any time she grew nervous she might record it without any further conversation with either Butler or Fardon. Mr. J. H. B. placed the mortgage in his safe, and kept it there until Monday, the 31st day of July, 1893. On Saturday, the 29th of July, Mr. Fardon was arrested for a criminal breach of the federal banking laws, and lodged in jail.

Roe *v.* Meding.

Miss Roe saw him on Sunday, and, at his suggestion, immediately sent word to Mr. J. H. B. to put her mortgage on record; and he swears, and he is probably right, that he lodged it for record on Monday morning, July 31st, but the clerk's certificate is that it was so lodged at four o'clock in the afternoon. In the meantime, during the business hours of July 31st, counsel for Mr. J. H. B. was engaged in preparing a bill for him, asking for the appointment of a receiver of the corporation, and Mr. J. H. B. made an affidavit to it on the 31st of July. Counsel presented it to a vice-chancellor on the next day, August 1st, and it resulted a few days later in the appointment of the complainant receiver. The property subject to the mortgage was sold free and clear of it by order of the court, and the proceeds are in court, subject to its disposition. Between the time of the giving of the mortgage and its filing for record, the corporation continued its business, and incurred large liabilities for materials purchased of divers dealers in raw silk in New York city. Several of these parties or their agents were sworn, and declared that they had no suspicion of any mortgage or lien, and, further, that they had, before selling the goods, made special inquiries of Mr. Butler as to whether there were any liens of any kind upon the plant of the corporation, and were assured by him that there were none. One other creditor examined the records for such liens. The proofs show that the giving of a chattel mortgage by a manufacturer tends to seriously injure his credit, and that if, in this case, the mortgage had been filed as soon as given, it is probable that none of the credits which were extended by the various dealers to this corporation after that date would have been given. The proofs further show Miss Roe to have been entirely inexperienced in business, and innocent of any intention to defraud, and quite ignorant that such might be the effect of her holding her mortgage off the record. She had no notion what the "business reason" was that Mr. Butler referred to when he asked her not to record the mortgage. In December, 1892, Miss Roe had endorsed a note made by the company, for its accommodation, to the defendant Todd, its landlord. That note was renewed when due, with a like endorsement, and Miss Roe became charged as endorser,

and after her mortgage was recorded she assigned a half interest in it to Mr. Todd, to secure him for her endorsement, and he was made a party defendant by reason of such assignment.

PITNEY, V. C. (after stating the facts).

The ground principally relied upon by the complainant is the withholding the mortgage from record from May 18th until July 31st, 1893, during which period the corporation had the benefit of the credit of owning this silk plant free and clear of encumbrance, and thereby acquired a mercantile credit to which it was not entitled, resulting in the incurring of very considerable indebtedness to persons who are now the creditors of the corporation, and are represented by the receiver. The right of the receiver to attack this mortgage, as a representative of creditors, cannot be disputed since the decision of the case of *Button Company* v. *Speilmann, 5 Dick. Ch. Rep. 120,* which was affirmed by the court of errors and appeals, *5 Dick. Ch. Rep. 796.* The question to be decided depends upon the true construction of the Chattel Mortgage act of May 2d, 1885. *Rev. Sup. p. 491.* The fourth section of that act provides—

"That every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, having annexed thereto an affidavit or affirmation made and subscribed by the holder or holders of said mortgage, his, her or their agent or attorney, stating the consideration of said mortgage and as nearly as possible the amount due and to grow due thereon, be recorded as directed in the succeeding section of this act."

This section had its origin in the act of March 24th, 1864. *P. L. of 1864 p. 493; Nix. Dig. of 1868 p. 613.* That act provided for the filing of a mortgage, instead of its record, and did not require an affidavit. The words requiring an affidavit were inserted by the act of March 19th, 1878. *P. L. of 1878 p. 139.* The act of March 12th, 1880 (*P. L. of 1880 p. 266*), provided merely for the recording of chattel mortgages. It seems to have

Roe *v.* Meding.

left it optional with the mortgagee whether he would record or file, making either sufficient. The act of March 25th, 1881 (*P. L. of 1881 p. 226*), was a revision of all the legislation on that subject. So held by Vice-Chancellor Van Fleet in *Bracher* v. *Smith, 8 N. J. L. J. 16.* That act omitted the clause requiring an affidavit, but required the instrument to be recorded. That was followed by the act of 1885, in which the requisition of an affidavit was again inserted.

The verbiage of the section under consideration is precisely the same as that of the original act of 1864, with the addition of the provision for an affidavit, except that "record" is substituted for "filing." Previous to any legislation on this subject, this branch of the law was in an unsatisfactory condition. The result of the opinion of this court in *Runyon* v. *Groshon, 1 Beas. 86,* and of that of the supreme court in *Miller* v. *Shreve, 5 Dutch. 250,* was to hold chattel mortgages, where the possession of the chattels remained in the mortgagor, *prima facie* void as against creditors, but capable of being validated by proof to the satisfaction of the trial court that the leaving them in the possession of the mortgagor was not intended for any fraudulent purpose, but was justified by the circumstances of the case. The defect of this state of the law was twofold: On the one hand, the absence of any legalized provision for recording such mortgages, and thereby giving notice to the world of the rights of the honest mortgagee, cast upon him the burden, in each case, of proving his honesty and the reasonableness of his conduct in leaving the chattels in the possession of the mortgagor, to the satisfaction of a jury, with the risk attending the uncertainty of a verdict. On the other hand, the entire honesty and good faith of the parties, and reasonableness of leaving the mortgaged chattels in the possession of the mortgagor, did not alter the intrinsic character of the situation as to third persons dealing with the mortgagor. They were still liable to be misled. It followed that two classes of persons besides the immediate parties were liable to be affected by this situation—*first,* the persons who dealt generally with the mortgagor, and had occasion to give him mercantile credit, and thereby become his creditors-

at-large; *second*, persons desiring to purchase the very property subject to the secret mortgage. Being ignorant of the existence of the encumbrance, and seeing the mortgagor clothed with the possession and apparent ownership of the property, the first class would naturally give him the mercantile credit due to such apparent ownership; and the second class might buy and pay for chattels, the title to which would not be thereby acquired. Experience has shown that the danger to this latter class was mitigated by the beneficial intervention of the doctrine of estoppel, as pointed out by Chief-Justice Whelpley in *Miller* v. *Shreve*, *5 Dutch. 250* (at *p. 255*), where he says: "Although the mortgage may not be invalid against creditors or subsequent purchasers for want of possession in the mortgagee, it by no means follows that it may not be void against subsequent purchasers by reason of the mortgagee's suffering the mortgagor to use and manage the mortgaged chattels in such a way as to deceive *bona fide* purchasers as to the right of the mortgagor to sell and dispose of the chattels.    *    *    *    Or, as suggested by Lord Mansfield, the property subsequently sold might be held discharged from the lien of the mortgage, as sold by the assent of the mortgagee by the mortgagor, as his agent authorized to do so, and receive the purchase-money for his benefit." But, as to persons becoming creditors as the result of general mercantile dealing with the mortgagor, the practical result was more mischievous, and called for and received legislative consideration and treatment, resulting in the Chattel Mortgage act of March 24th, 1864. That it was intended by this act to protect creditors-at-large is manifest by comparing its verbiage with that of the section providing for registry of mortgages of land. This last act declares that such mortgages " shall be void and of no effect against a subsequent judgment creditor, *bona fide* purchaser or mortgagee for a valuable consideration not having notice thereof, unless " &c., while the Chattel Mortgage act provided that " such mortgage unaccompanied by immediate delivery " &c. " shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless " &c. The words " good faith," used here, have been

held to mean "without notice." *Bank* v. *Sprague, 6 C. E. Gr. 536*. So that, with regard to subsequent purchasers and mortgagees, chattel mortgages are put on precisely the same footing as those of real estate. But it is impossible to escape the conviction that the legislature intended to give creditors-at-large an advantage, as against unrecorded chattel mortgages, not accorded to such creditors as to mortgages of land. As to these latter, it was held in *Bank* v. *Jones, 5 Dick. Ch. Rep. 244; S. C. on appeal, 5 Dick. Ch. Rep. 486*, that the mere withholding a mortgage of lands from the records for a long period of time was not sufficient to render it fraudulent and void against a subsequent mortgage to secure a prior indebtedness, which, however, was recorded subsequent to the record of the older mortgage, and I think it worth while to say of this case that its particular facts must be borne in mind in applying what was there said and the cases cited. But, with regard to the Chattel Mortgage act, the use of the words "subsequent judgment creditors," and the separating those words from "subsequent purchasers and mortgagees" by inserting the words "and as against," leaves no room for doubt as to the intention of the legislature to protect creditors-at-large. Such has been the construction put upon it by the courts. Chancellor Zabriskie, in *De Courcey* v. *Little, 4 C. E. Gr. 115* (at *p. 119*), says: "The complainants are mortgagees, not merely negligent, but in bad faith. They made an agreement with the mortgagors not to file the mortgage [intending thereby] to preserve a false credit to the mortgagors, and to impose upon subsequent creditors and mortgagees, contrary to the provisions and spirit of the act." He then points out the difference, alluded to above, between the Chattel Mortgage act and the Real Estate Mortgage act in this respect. In the same case, upon appeal (*De Courcey* v. *Collins, 6 C. E. Gr. 357*), Chief-Justice Beasley (at *p. 359*) said: "This is a remedial statute, its object being to discourage the placing of secret liens upon personal property; and this object is obviously promoted by requiring that these mortgages must be recorded at the places of the residence of all such of the mortgagors as reside in this state, and in the case of others, being non-residents, that there then

must be likewise a registration in the county in which the chattels are situate. I have no doubt, therefore, that in this case the mortgage of the appellees would have been invalid as against any creditor of the mortgagors obtaining, *bona fide*, a subsequent lien on the articles mortgaged." In *Bank* v. *Sprague, 6 C. E. Gr. 530,* Mr. Justice Van Syckel, speaking for the court of errors and appeals, says (at *p. 537*) of this act: "The object of the enactment was to give publicity to such transactions, and to sweep away those secret arrangements by which creditors were embarrassed and defeated and purchasers defrauded." He holds that as between successive mortgagees the prior mortgage in date is secure against a subsequent mortgage, if it is either filed, or possession taken under it, prior to the filing of the subsequent mortgage, and puts it upon the ground that, as between such successive encumbrances, there is no difference between the Chattel Mortgage act and that of lands. But this decision does not cover the case of creditors-at-large who have given credit on the strength of apparent ownership. Whatever was said by him looking in that direction was subsequently overruled by the same court, as will hereafter appear. And see, in this connection, the language of Chancellor Runyon, in *Williamson* v. *Railroad Co., 1 Stew. Eq. 277* (at *p. 286*), and of Vice-Chancellor Van Fleet, in *Bracher* v. *Smith, 8 N. J. L. J. 16,* where he says: "It should be said at the outset that one of the principal purposes of all legislation on this subject has been to prevent secret pledges of chattels being made as security for debt."

In view of these judicial expressions, and the evident intention shown by the legislature to give creditors-at-large protection against secret liens upon chattels, let us turn again to the language of the act itself. Now, notwithstanding what was said by the learned judge in the court of errors and appeals, in *Bank* v. *Sprague, 6 C. E. Gr. 537,* it seems impossible to hold that by "immediate delivery," in the Chattel Mortgage act, the legislature did not mean just what it said. Of course, the words must have a reasonable construction, as applied to the subject-matter, and "immediate delivery" must be held to mean a delivery consummated as quickly as the circumstances of the case

and the character of the chattels will permit. Unless this is done the law declares that the mortgage is absolutely void as to creditors. Such a mortgage is put by the statute upon the same footing, as to creditors, as conveyances of land made without consideration, for the purpose of defrauding creditors, at the common law and under the statute of Elizabeth. This was so declared and decided in *Williamson* v. *Railroad Co., 2 Stew. Eq. 311, head-note 9.* The subject was dealt with by the learned judge, Depue, speaking for the court of errors and appeals (at *p. 336*), where he says: " There is a distinction made in the statute between the creditors of the mortgagor and subsequent purchasers or mortgagees, with respect to the avoidance of the mortgage for neglect to file the same or to take immediate possession. Purchasers or mortgagees, in order to take advantage of the failure of another mortgagee of chattels to comply with the statute, must be subsequent purchasers or mortgagees, taking their title under the mortgagor in good faith. A purchaser or mortgagee acquiring his rights with notice of the existence of the antecedent mortgage does not obtain his title in good faith. Consequently, possession taken of the mortgaged property under a prior chattel mortgage, however long postponed, will give it priority over a subsequent purchase or mortgage, if possession be taken in fact before such subsequent sale or mortgage was made. But no such qualifications apply as against the creditors of the mortgagor. Their rights may have accrued prior or subsequent to the mortgage, and yet they will be entitled to the benefit of the statute. Knowledge of the existence of a chattel mortgage executed by the debtor will not preclude a creditor from availing himself of the objection that the mortgage is void because it was not accompanied by immediate delivery of the things mortgaged, followed by an actual and continued change of possession. * * * The distinction between creditors and subsequent purchasers or mortgagees, in this respect, was recognized in the opinion of this court in *Bank* v. *Sprague, 6 C. E. Gr. 530.* The chancellor's construction [in this case *1 Stew. Eq. 285 bot. 286 top*] of the statute holding that possession of the chattels mortgaged, taken before judgment recovered, will not

give validity to the mortgage, as against the execution creditor, if the mortgage was not filed according to the provisions of the act, and there was not an immediate delivery and continued change of possession of the things mortgaged, was correct." This language removes whatever doubt there may have been thrown on the subject by what was said about immediate delivery by the same court in the former case of *Bank* v. *Sprague*. The court, in *Williamson* v. *Railroad Co.*, followed the case of *Thompson* v. *Van Vechten, 27 N. Y. 568*, considering the New York statute, which is precisely similar to ours. The same doctrine was reiterated in *Button Company* v. *Spielmann, 5 Dick. Ch. Rep. 120 ; affirmed on appeal, 5 Dick. Ch. Rep. 796*. In *5 Dick. Ch. Rep. 128*, the learned vice-chancellor says : " The statute of frauds makes a deed executed in fraud of creditors absolutely void as against the creditors of the grantor, and the statute under consideration makes a chattel mortgage executed in disregard of its requirements absolutely void as against the creditors of the mortgagor. To invalidate the first, fraud must be shown, and to invalidate the second it must appear that the statutory requirements have not been observed in its execution ; but when the first has been shown to be fraudulent, and when it appears that the second was not executed in compliance with the requirements of the statute, then both are placed, by positive law, in precisely the same category ; both are then without the least legal force as against creditors, and must be so treated by the courts. To invalidate a chattel mortgage executed in disregard of the requirements of the statute, the person assailing its validity is not required to show, in addition to such fact, that it was executed to defraud creditors. The statute requires nothing of that kind, but, on the contrary, expressly declares that, if the statutory requirements have not been observed in its execution, it shall for that reason, and that reason alone, be treated as void as against creditors. The fault which renders it void as against creditors is not fraud, but the failure of the mortgagee to perform a duty which the statute imposes upon him." And see *Martin* v. *Bowen, 6 Dick. Ch. Rep. 452* (at *p. 460*). This doctrine does not give creditors the right to come into court and

Roe *v.* Meding.

·dispute the chattel mortgage before they have obtained a judg-
ment, or otherwise established their position in court.   They
must still do what they must do in the case of a fraudulent con-
·veyance of land—establish their right to come into court as
·creditors.   *Button Company* v. *Speilmann* holds that a receiver
of an insolvent corporation represents the creditors, and gives
them the standing of judgment creditors.   We thus see that the
statute has a dual aspect or character, being at once a statute
protecting creditors against fraudulent encumbrances, and a
·statute providing notice by registry of honest encumbrances in
·order to establish priorities of liens according to merit.

Now, with this judicial exposition, it seems to be impossible
to hold that if the legislature intended that, in·order to give a
chattel mortgage validity as against creditors, it must either be
accompanied by immediate change of possession or filed for
record, it did not mean that it should be so filed immediately.
It would be absurd to hold that while a' mortgagee could not
save his mortgage from the ban of the statute by taking posses-
sion at a period long after it was executed, but prior to the
·recording of the judgment by the creditor, he might still save it
by filing it for record at such late day.   It would be self-stulti-
fication for the legislature to give creditors protection against a
false credit due to the apparent ownership of chattels subject to
·secret liens by prescribing in one breath the remedy of the pub-
licity due to an immediate change of possession, and take it
·away in the next breath by legalizing, as an alternative to such
publicity, the very secret lien against which protection was
needed.   Looking again at the language of the act as it was
·originally enacted, before the insertion of the clause requiring
·the affidavit, it seems to me that it is quite in accordance with
·sound rules of construction to hold that the force of the word
·"immediate" extends throughout the sentence, and applies to
the "filing or recording" as well as to the "delivery of posses-
·sion."   Its classification as an adjective does not interfere with
this construction.   The sentence, in my judgment, should be con-
·strued as if it had been written thus:

Roe *v.* Meding.

"Every mortgage of chattels shall be absolutely void as against the creditors of the mortgagor and as against subsequent purchasers and mortgagees in good faith unless it be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged, or [a true copy thereof be filed] [be recorded] as directed in the succeeding section of this act."

Read in that way, there can be no doubt that the force of the word "immediate" would reach both members of the sentence. It is hardly necessary to say that the subsequent interjection of the clause requiring an affidavit, which still further separated the members of the sentence now under consideration, did not have the effect of altering the construction. The construction which requires an immediate filing (recording) as well as an immediate delivery is that which has been put by the New York courts upon their statute, which is precisely like our original act. *Thompson* v. *Van Vechten, 27 N. Y. 568.* The issue there was between a chattel mortgage, filed several months after its execution, and a judgment recovered after the filing of the mortgage, founded upon a debt incurred between the date of its execution and its filing. Chief-Justice Denio (at *p. 581*) says : "When the debt was contracted, Shaw's mortgage was in existence, having been executed the preceding February, but it was not filed until more than a month afterwards. Furthermore, Shaw was in default for not refiling his mortgage from the 7th of July, 1855, inclusive, down to the time of the marshal's sale. I am of opinion that each of these omissions have operated to give the executions the preference over the mortgage. The statute of 1833 declares that a mortgage not filed (where there is no delivery of possession) shall be absolutely void as against the creditors of the obligor. *P. L. of 1833 ch. 279 § 1.* It is argued that this embraces only creditors who have obtained judgments and executions during the time when the omission to file existed. If this were so the act would not, in many cases, accomplish any beneficial purpose. One proposing to part with money or property to another, under a contract to be repaid at a future time, could obtain no information for his guidance by a search at the proper office. But it was the apparent, and I think the real, object of the act to prevent the setting up of secret mortgages against persons who might deal with the

Roe v. Meding.

mortgagor on the faith that his property was not thus encumbered. It is true the mortgage cannot be legally questioned until the creditor clothes himself with a judgment and execution, or with some legal process against his property, for creditors cannot interfere with the property of their debtors without process. But, when they present themselves with their process, they may, I think, go back to the origin of their debt, and show, if they can, that when it was contracted the encumbrance with which they are now confronted existed, and was kept secret by being withheld from the proper office. I observe that it is insisted that the bank or its assignee cannot object to the default in filing the mortgage before the debt was contracted, because it is not shown that the notes were negotiated to them during that time. But I think the right to a preference over the unfiled mortgage attaches to the debt, and accompanies it when transferred to another in the course of the negotiation of commercial paper." This doctrine has never been questioned, but always followed, in that state, the latest case being *Karst* v. *Gane, 136 N. Y. 316.* Numerous authorities in other states were cited at the argument, but I deem it not worth while to refer to them here. The construction put upon this section of the statute by our sister State of New York is, in my judgment, founded in reason, and should be adopted.

It remains to consider whether this construction is discordant with the ninth section of the act, which provides—

"That every chattel mortgage hereafter recorded pursuant to the provisions of this act shall be valid against the creditors of the mortgagor, and against subsequent purchasers and mortgagees from the time of the recording thereof until the same be canceled of record in the manner now provided by law for canceling of mortgages of real estate."

This section was first introduced, in a slightly different shape, in the act of March 12th, 1880 (*P. L. of 1880 p. 266*), and in its present shape in the act of March 25th, 1881 (*P. L. of 1881 p. 226*). Its object seems to have been to give the same value and effect to the mere recording that by the original act was given to filing the instrument, and leaving it in the custody of the officer for inspection by interested parties. Reliance is, of course, placed

upon the words, " shall be valid from the time of the recording thereof." Does that expression mean valid as against all parties, or only as against subsequent purchasers and mortgagees? If the former, then the dual aspect of the act established by the cases above cited is at once destroyed, and it becomes no more than a mere act providing for notice to subsequent purchasers, encumbrancers and judgment creditors, precisely like the Land Mortgage act, and all its value and force as an act against fradulent encumbrances for protecting unsuspecting creditors from the effect of secret liens on personal property is destroyed. Such a construction should not be adopted unless no other reasonable one offers. I think the section should be construed distributively, and the words " from the time of the recording thereof " confined in their application to subsequent purchasers and mortgagees. Such construction preserves the symmetry and dual aspect of the act, and makes all its parts accord with each other. The remedy against the false credit of apparent ownership of property subject to secret liens, provided by the fourth section, stands by the side of the provision for notice as against subsequent purchasers and mortgagees, undisturbed by this ninth section. Here, again, the arrangement of the verbiage throws some light on the question. The two members of the sentence are separated by a comma after the word " mortgagor," the last word of the first member, and the second member is commenced by the words " and against," the word " against " being repeated. Now, I can see no reason why the sentence should have been thus divided and that word " against " repeated, if the legislature intended to put creditors, purchasers, and mortgagees all on the same footing, and take away from creditors-at-large what was so plainly given them by the fourth section. For these reasons, I am unable to see that the ninth section was intended in any wise to affect the construction of the fourth section.

It is next to be observed that the statute lays down a hard and fast rule governing these transactions which, so far as regards creditors-at-large, is not affected by the honesty and innocence of the motives and intentions of the parties, or by the solid consideration paid. The rule which prevails in conveyances of land

not governed in this respect by statutory regulation, that when a full consideration is paid the fact that the motive of the grantor in making the conveyance was to defraud his creditors will not avail to render it void as to them unless the grantee had notice of such intention, and participated in it, cannot apply here. Miss Roe must indeed be held, upon the proofs, to have been entirely innocent of any intention to mislead the company's creditors, and quite ignorant that withholding her mortgage from record might have that effect. But such innocence and ignorance cannot help her in the face of the statute. The intrinsic and insuperable difficulty in her way is that she made use of certain machinery which the law permitted her to use with complete safety only upon certain conditions, and those conditions she has not fulfilled. She was misled into omitting to fulfill them by her misplaced confidence in her relative, and deliberately directed her agent to keep her mortgage in his safe, and not put it on record until she directed him to do so. That direction she withheld for ten weeks. That delay was fatal, and the decree must be against her. It is hardly necessary to say that Mr. Todd can have no better standing in this respect than his assignor had. This result renders it unnecessary to consider the other grounds relied upon by the complainant.

*Mr. John W. Griggs*, for Madeline E. Roe et al.

*Mr. Eugene Stevenson*, for the receiver.

The opinion of the court was delivered by

Van Syckel, J.

This bill is filed by the receiver of an insolvent corporation, appointed by the court of chancery, against Madeline A. Roe, who holds a mortgage upon the chattels of the corporation, to obtain a decree declaring the mortgage void as to creditors. Between the time of giving the mortgage and its filing for record, the corporation continued its business and incurred large liabilities, which were unpaid when the receiver was appointed.

Roe *v.* Meding.

This appeal is taken from the decree of the court of chancery declaring the mortgage void as to the creditors represented by the receiver.

The case of *Receiver* v. *Spielman, 5 Dick. Ch. Rep. 120,* which was affirmed by this court, *5 Dick. Ch. Rep. 796,* establishes the right of the receiver to challenge the validity of this mortgage.

The decision of the controversy involves the true construction of the Chattel Mortgage act of May 2d, 1885. *Rev. Sup. p. 491.*

The fourth section of that act provides—

"That every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith" &c.,

unless the mortgage has annexed an affidavit as specified in said fourth section and is recorded as required by the fifth section.

The language of this act is the same as that of the original act of 1864 (*P. L. of 1864 p. 493*), with the addition of the provision for an affidavit, except that "record" is substituted for "filing."

That these acts were intended to protect creditors-at-large is apparent from the fact that the draughtsman did not adopt the language of the act requiring the registry of mortgages of real estate.

That act provides that real estate mortgages

"shall be void and of no effect against a subsequent judgment creditor, *bona fide* purchaser or mortgagee for a valuable consideration not having notice thereof unless recorded" &c.

The omission of the word "judgment" before "creditors" in the acts of 1864 and 1885 is an unmistakable indication that there is no limitation of the class of creditors to which they shall apply; not "judgment creditors" alone, as in the Real Estate Registry act, but all creditors without exception.

Our cases uniformly hold that the object of these enactments was to give publicity to liens upon personal property, and to sweep away secret arrangements, by which creditors were embarrassed and defeated. *De Courcey* v. *Little, 4 C. E. Gr. 119; S. C., 6 C. E. Gr. 357; Bank* v. *Sprague, 6 C. E. Gr. 530.*

And the effect as to creditors of the failure to take immediate possession or to record the chattel mortgage has been passed upon by this court.

In *Williamson* v. *Railroad, 2 Stew. Eq. 336,* Mr. Justice Depue, in delivering the opinion of the court, says : " There is a distinction made in the statute between the creditors of the mortgagor and subsequent purchasers and mortgagees, with respect to the avoidance of the mortgage for neglect to file the same, or to take immediate possession. Purchasers or mortgagees, in order to take advantage of the failure of another mortgagee of chattels to comply with the statute, must be subsequent purchasers or mortgagees, taking their title under the mortgagor in good faith. A purchaser or mortgagee acquiring his rights with notice of the existence of the antecedent mortgage, does not obtain his title in good faith. Consequently, possession taken of the mortgaged property under a prior chattel mortgage, however long postponed, will give it priority over a subsequent purchase or mortgage, if possession be taken, in fact, before such subsequent sale or mortgage was made. But no such qualifications apply as against the creditors of the mortgagor. Their rights may have accrued prior or subsequent to the mortgage, and yet they will be entitled to the benefit of the statute. Knowledge of the existence of a chattel mortgage executed by the debtor, will not preclude a creditor from availing himself of the objection that the mortgage is void, because it was not accompanied by immediate delivery of the things mortgaged, followed by an actual and continued change of possession. The distinction between creditors and subsequent purchasers or mortgagees in this respect, was recognized in the opinion of this court in *National Bank of Metropolis* v. *Sprague, 6 C. E. Gr. 530.*"

The opinion further declares that " the chancellor's construction of the statute, holding that possession of the chattels mort-

gaged taken before judgment recovered, will not give validity to the mortgage as against the execution creditor, if the mortgage was not filed according to the provisions of the act, and there was not an immediate delivery and continued change of possession of the things mortgaged, was correct."

It must therefore be conceded that the correct interpretation of the fourth section of the act of 1885 is, that if the mortgage is unrecorded, the failure to take immediate possession postpones the mortgage to all creditors of the mortgagor, as well those who become creditors before possession is taken, as those who become creditors after there has been a failure to take immediate possession; the mortgage by the terms of the act is invalidated by such delay as to creditors.

I agree with the vice-chancellor, that the force of the word "immediate" extends throughout the sentence, and applies to the "filing or recording," as well as to "the delivery of possession."

The protection to creditors would be slight if the mortgagee could retain his priority over creditors by filing his mortgage long after it was taken by him, instead of taking possession of the goods mortgaged. The policy of the statute cannot be so easily defeated. Immediate possession or immediate recording means as soon as may be by reasonable dispatch under the circumstances of the case.

The effect of the ninth section of the act of 1885 remains to be considered. It is as follows:

"That every chattel mortgage hereafter recorded pursuant to the provisions of this act shall be valid against the creditors of the mortgagor, and against subsequent purchasers and mortgagees from the time of the recording thereof until the same be canceled of record, in the manner now provided by law for canceling of mortgages of real estate."

This section had, manifestly, two objects in view.

One was to change the law requiring a mortgage to be refiled, and to provide that, after it was recorded according to law, it should be a valid encumbrance until it was satisfied or canceled of record.

The other purpose was to modify the rule which had prevailed under the interpretation previously given to the language of the fourth section of the act of 1885.

As before stated, if the mortgagee fails to record his mortgage immediately, he cannot, according to the fourth section, regain his position as against creditors of the mortgagor by afterwards recording it, whether they become creditors before or after such recording.

In my judgment, the purpose of the ninth section was to enable the mortgagee who failed to record his mortgage immediately, to preserve his lien as against all persons who become creditors of the mortgagor after he records his mortgage, and in that respect to put him on the same footing with one who purchases or takes a mortgage after the prior mortgage is recorded.

This interpretation is in harmony with the policy of the registry law, which is directed against secret liens and not against known encumbrances, and it gives full effect to the words " from the time of the recording thereof until the same be canceled of record." It is also just in its operation, as there is no good reason why the law should favor a general creditor, who has notice from the record, more highly than it does a purchaser or mortgagee with like notice.

Unless so construed, it must be held either that these words in the ninth section have no effect whatever, so far as creditors-at-large are concerned, which is not permissible if reasonable effect can be given to them, or that a filing at any time, however long, after the credit is given, entitles the mortgage to priority over the creditor.

The latter construction would nullify the fourth section of the act, so far as it applies to general creditors, and sweep away the guard against secret liens.

The mortgage of the appellants was not recorded as prescribed by the act of 1885, and it is, therefore, subsequent and subject to the claims of all persons who became creditors of the mortgagor before the mortgage was recorded, but is prior to the claims of all those who became creditors after it was recorded. In this case it appears that all the credits were given before

24

the mortgage was recorded, and the decree should therefore be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, GUM-MERE, LIPPINCOTT, MAGIE, VAN SYCKEL, BOGERT, BROWN, KRUEGER, SIMS—10.

*For reversal*—None.