The defendant corporation was adjudged insolvent and a receiver appointed under section 66 of the Corporation act. Comp. Stat.p. 1643. The receiver took possession of the chattels which he supposed to belong to the company, mostly refrigerating machinery and supplies. He ascertained that there was a chattel mortgage made by defendant and held by the Frick Company, purporting to secure a debt of $5,000. Furthermore, he learned that the Frick Company claimed to own the refrigerating machinery that had come into his possession. He then filed a petition under section 81 of the Corporation act in which he set forth the claims of the Frick Company, and that he questioned their legality and stated that the property involved was of a character materially to deteriorate in value pending litigation. Therefore he prayed leave to sell the chattels free from the liens of the Frick Company, the proceeds of sale to remain subject to the same liens and equities. On the hearing, it appeared that the chattels were not of a perishable nature and the petition was dismissed.
The Frick Company presents a petition praying that the receiver be directed to surrender to it the machinery and other chattels on which it claims a lien, or absolute title. The receiver has answered and filed a cross-petition in which he again attacks the claims of the Frick Company and prays that these claims be adjudged null and void as against him.
The Corporation act contains no express provisions relating to disputed liens on, or titles to, property in the possession of the receiver, except when the property subject to an alleged lien is of a character materially to deteriorate in value before the validity of the lien can be determined; then a sale pendentelite is authorized and the controversy is transferred to the proceeds of sale. Section 81. This section *Page 336 
does not detract from the power of the court to adjudge disputed liens and titles; it merely authorizes sale pendente lite and impliedly requires, when the property is not peculiarly subject to depreciation, that the validity of the lien should be determined before sale. Regardless of the character of the property, the dispute is usually determined by this court, in the cause in which the receiver was appointed, and in as summary a manner as the nature of the controversy permits. The general principle was expressed in Murphy v. John Hofman Co.,211 U.S. 562; 29 S.C. 154: "But where the property in dispute is in the actual possession of the court of bankruptcy, there comes into play another principle, not peculiar to courts of bankruptcy but applicable to all courts, federal or state. Where a court of competent jurisdiction has taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The court having possession of the property has an ancillary jurisdiction to hear and determine all questions respecting the title, possession or control of the property. In the courts of the United States, this ancillary jurisdiction may be exercised though it is not authorized by any statute. The jurisdiction in such cases arises out of the possession of the property and is exclusive of the jurisdiction of all other courts, although otherwise the controversy would be cognizable in them." To the same effect, although not in a bankruptcy case but in an equity receivership, in WabashRailroad Co. v. Adelbert College, 208 U.S. 38; 28 S.C. 182.
The jurisdiction is exercised in a summary manner. Ex parte CityBank, 44 U.S. 292; 11 L.Ed. 603; Clay v. Waters,178 Fed. Rep. 385; 101 C.C.A. 645; Priest v. Weaver (C.C.A.),43 Fed. Rep. 2d 57. A recent case reiterating the power of the bankruptcy court to adjudicate liens is Isaacs v. Hobbs Tieand Timber Co., 282 U.S. 734; 51 S.C. 270.
It is settled law that in the decision of questions arising in the administration of the assets of an insolvent corporation, our statute must be regarded as essentially a bankrupt act and the rules to be applied are those which control in *Page 337 
bankruptcy proceedings. Butler v. Commonwealth Tobacco Co.,74 N.J. Eq. 423; Nutz v. Murray-Nutz, Inc., 109 N.J. Eq. 95;Grobholz v. Merdel Mortgage Investment Co., 115 N.J. Eq. 411;Jersey City Welding and Machine Works v. Hudson County WhiteCo., 116 N.J. Eq. 548. The last two cases are not opposed to the rule that this court should decide questions relative to property in the hands of its receiver; they hold, in conformity with the federal statute, that a money claim of a receiver against a third party should not be decided in a summary manner in the receivership cause.
Our statute, like the federal act, imposes on the court and to its agent, the receiver, broad duties and powers. To perform the duties cast upon it, the court necessarily has power to determine the title to and liens on the estate which it administers. Chancery has jurisdiction of the controversy stated in the receiver's cross-petition.
The chattel mortgage is attacked on several grounds, and first that the affidavit annexed is insufficient on its face to meet the requirements of section 4 of the Chattel Mortgage act. Comp.Stat. p. 463. The mortgage recites that the mortgagor is indebted to the mortgagee in the sum of $5,000 evidenced by a promissory note dated June 1st, 1932, and that the mortgage is given to secure payment thereof; it covers motor vehicles and other articles listed separately as well as groups of articles, such as "tools and equipment;" to each article or group a figure is added, the whole totaling $5,000. Extrinsic evidence proves that the mortgage was given to secure the purchase price of the chattels, sold by the mortgagee to the mortgagor. The affidavit states that the consideration is "a certain amount of refrigerating fittings and supplies, automobiles, trucks, office fixtures, tools and equipment, and deponent further says that there is due on said mortgage the sum of $5,000, besides lawful interest thereon from the first day of June, 1932." The affidavit, while indefinite, is sufficient within the rules laid down in American Soda Fountain Co. v. Stolzenback,75 N.J. Law 721; Shupe v. Taggart, 93 N.J. Law 123; Howell v. Stone, *Page 338 75 N.J. Eq. 289, and Bateman Bros., Inc., v. Jones, 109 N.J. Eq. 8.
The mortgage was executed and delivered June 2d 1932, in Hudson county, and was recorded in the same county June 11th. No explanation of the delay is given. This was not the immediate recording required by section 4 of the Chattel Mortgage act. But the delay does not avoid the mortgage in favor of creditors who had constructive notice of the mortgage when they gave credit to defendant. The receiver does not allege that he represents any creditor whose claim antedates the recording of the mortgage and therefore he cannot take advantage of the delay, if indeed the recording was authorized by the statute. Roe v. Meding,53 N.J. Eq. 350; Wimpfheimer v. Perrine, 67 N.J. Eq. 597; Warner
v. Cranford Printing Co., 116 N.J. Eq. 166.
The Frick Company's claim of absolute title in certain chattels other than those covered by the mortgage is based on a long and complicated agreement between it and the defendant. In this agreement, the former is called the "company" and the latter the "factor." It purports to be a factorage contract, under whose terms the company agrees to furnish to the factor for sale within described territory, a stock of refrigerating machinery on consignment.
The Frick Company contends that under this agreement it retained title to the machinery until it should be sold to the customers of defendant; that the Mack company, defendant, was a bailee and the Frick Company's sales agent. The receiver urges that the contract was an agreement of sale which operated to vest title in the Mack company as soon as the machinery was received by that company.
The words "factor" and "consignment," used by the parties, tend to show that defendant was only a bailee, but they are not conclusive. The contract as a whole must be weighed and not merely a few clauses. If the contract operated to vest in the Mack company the principal incidents of title, then it passed title itself and the stipulation found in it that title shall remain in the Frick Company until the machinery is fully paid for, is inconsistent with the main *Page 339 
purpose of the contract and must be disregarded. The main incidents of title to chattels are the right to possession, to move the chattels from place to place, to use, to alter or even destroy, and to sell, and the risk of loss from fire or other hazard belongs to the owner.
Under the contract in question, possession was given to defendant, but it was expressly agreed that the machinery should be subject to removal from the possession of defendant, at the order and for the account of the Frick Company. The former had not an absolute right of possession. Nothing appears in the contract about the use of the property while in the possession of defendant and this is natural since it was a dealer and not a user of refrigerating machinery. Nor is anything said about alterations but I think the implications are against the right of defendant to make any changes in the machinery sent to it. There are no restrictions on the right of defendant to move the machinery from place to place. The contract placed the risk of loss from fire, theft, depreciation, c., on the Frick Company. True, defendant agreed to provide suitable storage and also to insure, at its own expense, for the benefit of the Frick Company, and failing to do so, defendant is made liable to the Frick Company for any loss sustained. But these provisions recognize that the loss in the first place falls on the Frick Company, and defendant is only liable in case it fails to live up to the terms of the contract. The common law liabilities of a bailee may be enlarged by contract without destroying the character of the relation. Dryden v. Michigan State Industries (C.C.A.),66 Fed. Rep. 2d 950.
The defendant was to sell the machinery "in its own name and for its own accounts and at its own expense," and at a price and on terms fixed by itself, but it should be noted that each sale by defendant was subject to approval by the Frick Company. "The factor agrees to deliver from stock only the machinery for which the company has accepted its orders." Again, defendant was not obligated to remit to the Frick Company the entire selling price less a commission; settlement between the two companies is based on the Frick Company's *Page 340 
price list, regardless of the price at which defendant might sell. This arrangement, however, governed sales not only of machinery in the possession of defendant but machinery remaining at the factory of the Frick Company. It is sometimes considered that if the consignee is to sell at a price and upon terms set by himself, and is bound to pay the consignor a fixed price or return the goods, then the contract between them is one of sale and not of bailment. But by the great weight of authority, this is not a conclusive test. Where the other terms of the agreement indicate a bailment, a compensation of the consignee may be the excess over a stipulated price and still the contract is not one of sale. "A contract between a furnisher of goods and the receiver, that the latter may sell them at such prices as he chooses; that he will account and pay for the goods sold at agreed prices; that he will bear the expense of insurance, freight, storage and handling, and that he will hold the unsold merchandise subject to the order of the furnisher discloses a bailment of sale and does not evidence a conditional sale. It contains no agreement of the receiver to pay any agreed price for the goods. It is not, therefore, affected by a statute which renders unrecorded contracts for conditional sales voidable by creditors and purchasers. The fact that such a contract provides that the receiver of the goods may fix the selling prices and may retain the difference between the agreed prices of the accounting and the selling prices to recompense him for insurance, storage, commission, and expenses, does not constitute the contract an agreement of sale. It still lacks the obligation of the receiver to pay a purchase price for the goods and the obligation of the furnisher to transfer the title to him for that price." In reColumbus Buggy Co., 143 Fed. Rep. 859; 74 C.C.A. 611. See, also,Ludvigh v. American Woolen Co., 231 U.S. 522; McCallum v.Bray-Robinson Clothing Co. (C.C.A.), 24 Fed. Rep. 2d35; Harris v. Coe, 71 Conn. 157; 41 Atl. Rep. 552; Lenz v.Harrison, 148 Ill. 598; 36 N.E. Rep. 567; Central Trust Co. v.Duncan, 92 Ind. App. 224; 168 N.E. Rep. 506.
Lastly, the contract before me lacks the distinguishing feature *Page 341 
of a contract of sale, namely, an absolute obligation by the purchaser to pay for the goods. The defendant undertook to pay only in the event that he sold the machinery or breached some provision of the contract. Taking the contract as a whole it appears that defendant held the machinery as bailee and that the Frick Company has a right, good as against the receiver, to resume possession.
The Frick Company also prays that the receiver account to him for sale made by defendant and that he deliver up any cash or securities on hand the produce of such sales. This prayer is based on section 18 of the contract, "it is also agreed that the factor may make bona fide sales of such machinery according to the terms of this contract in its own name and upon such sales, so far as the company is concerned, it may give good title to its customers, but if such sales be otherwise than for cash, factor shall retain or acquire title thereto for the benefit of the company and until the company is fully paid in cash for such machinery and equipment, the factor shall hold such title, together with all cash received from its customer in trust for the company and deliver the same over to the company as directed from time to time." At the present moment, no evidence has been submitted that machinery (other than that still held by the receiver) has been delivered to the defendant for which the Frick Company has not been paid. The rights of the Frick Company under the paragraph above quoted need not be now considered.
Let there be a decree (1) adjudging the chattel mortgage to be valid as against the receiver, (2) granting to the Frick Company the right to remove at its own expense the machinery covered by the factorage contract, and (3) reserving the question of the Frick Company's alleged title to the proceeds of sale made by the Mack company. *Page 342