The defendant corporation was decreed to be insolvent in proceedings initiated by the filing of the bill of complaint on September 7th, 1940, and Anthony T. Augelli was appointed its statutory receiver. On October 7th, 1940, Sam Horowitz, a resident of the State of New York, filed a petition herein which alleges, in substance: That on December 22d 1939, he entered into an agreement with the defendant corporation under the terms of which he would loan it sums of money as its needs required; and for those loans he received assignments of defendant's accounts receivable arising in the course of its business, in an amount sufficient to secure him for advances made. Through the bills assigned he collected all of his advancements excepting the sum of $544.94, which he alleges is due him. There were approximately forty-nine loans made to the insolvent defendant, for which he received thirty-six separate assignments of accounts receivable as collateral security. The accounts were subject to trade discounts. The assignments were executed and delivered at irregular intervals.
The petition seeks to restrain the receiver from interfering with petitioner's collection of eight outstanding accounts receivable and to compel him to turn over to the petitioner such sums as he may have collected from those accounts on and after the day of the institution of these proceedings.
The receiver filed an answer and counter-claim to the petition alleging generally that the assignments of the accounts receivable executed by the defendant were void and constituted an illegal preference because the insolvent defendant corporation was permitted to, and did, collect the sums due from the customers after it had assigned the accounts and that the assignments being made subsequent to the actual loans, were given for antecedent debts, at times when the *Page 539 
corporation was insolvent. The counter-claim prays that the petitioner "be directed to forthwith pay over to the receiver any and all moneys collected or realized by the petitioner from or upon any or all of the accounts receivable * * * referred to."
The petitioner, on motion, seeks to strike the counter-claim contending that: the relief prayed for therein can be obtained only by a plenary suit; that the receiver is without authority to proceed; and that this court has no jurisdiction of the subject-matter of the counter-claim.
The petitioner and the receiver have stipulated that "the eight outstanding accounts receivable could be collected by the receiver, and the fund segregated and turned over intact to the prevailing party upon the hearing of the petition."
The petitioner takes the position that this court cannot, in a summary manner, determine a claim by a receiver against a person who is not a party to the original cause, wherein the receiver was appointed unless the court has physical possession of the property in dispute, or unless the adverse claimant has consented to such form of proceeding; and as an authority to sustain his position, he cites Riedinger v. Mack Machine Company ofHarrison, Inc., 117 N.J. Eq. 334; 175 Atl. Rep. 790, wherein the court, among other things, said:
"Where a court of competent jurisdiction has taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The court having possession of the property has an ancillary jurisdiction to hear and determine all questions respecting the title, possession or control of the property.
"* * * a money claim of a receiver against a third party should not be decided in a summary manner in the receivership cause."
The petitioner argues that the receiver's powers are prescribed by statute (R.S. 14:14-7); and he proceeds to enumerate them as follows: "to sue for and collect the property of the insolvent corporation, and to institute suits at law or in equity for the recovery of property or demands existing in favor of the corporation; he may allow set-offs in *Page 540 
favor of adverse claimants; and he may oppose claims of creditors." He says that nowhere is he given authority to file a counter-claim against a creditor who petitions in the cause, much less to institute summary proceedings against a person not a party to the cause.
Since a "receiver's authority to file a counter-claim" does not appear to be mentioned in the petitioner's enumeration of receivers' powers, he assumes, in effect, that therefore the counter-claim herein is without the sanction of law, and consequently, should be stricken.
The petitioner, also, to some extent, invokes the ruling of the Court of Errors and Appeals in Grobholz v. Merdel MortgageInvestment Co., 115 N.J. Eq. 411; 170 Atl. Rep. 815.
The Grobholz Case is frequently cited as a bar to a summary proceeding of a cause which should properly be brought only in a plenary suit. The situation in the Grobholz Case was far different from the facts appearing here.
This petitioner, himself, initiated a summary proceeding to determine "his rights" under an agreement; yet, in the proceeding he chose to adopt, he would bar any consideration of the receiver's claim which allegedly arises out of the very agreement upon which he bases his demand. He selected the "weapon of legal combat" to establish his cause, but would deny his opponent the use of the same instrument to assert his right. His position, in effect, appears to be "I am legally present in court; but the receiver is judicially absent." He states that by filing his petition, he has not expressly consented to the court's entertaining the receiver's counter-claim. In his argument he admits that there is no case in this state "where this specific question was decided;" but he avers the "law relating to insolvent corporations is essentially a bankruptcy law, and that in a general way, the bankruptcy practice may be followed in administering the estate of an insolvent corporation under our state law."
Under the Bankruptcy act, in sections 60, 67 and 70, a trustee is authorized in certain instances to proceed in the bankruptcy cause by summary proceedings against a person not a party to the cause, to recover property belonging to the bankrupt estate, to set aside certain fraudulent transfers, and *Page 541 
for other purposes. However, under our state law relating to insolvent corporations, the receiver would be compelled to resort to a plenary suit in every instance, unless the adverse claimant consented to proceeding in the original cause, or unless the property was in the physical possession of the court itself through the receiver as its agent.
In his answer the receiver sets up: The agreement of December 22d 1939, relating to the loans and advances to be made by the petitioner, was made, executed and delivered in the State of New York and it provided that it should be construed according to the laws of that state; that under the law of the State of New York, the agreement of December 22d 1939, and the several assignments of accounts receivable made in pursuance thereof, are fraudulent and void as against the creditors of the defendant corporation because the petitioner, as assignee, permitted the defendant corporation either by express or implied consent to collect the accounts receivable assigned to him; that the defendant corporation exercised dominion and control over checks, drafts and other evidence of payment issued by customers; that the defendant corporation has used the proceeds thereof and commingled the same with its general funds; that substantial portions of merchandise covered by the assigned accounts receivable were returned and redelivered to the defendant corporation by the respective purchasers thereof; and that the petitioner permitted the defendant corporation to treat said merchandise as its own property, sell said returned merchandise in the ordinary course of its business and to treat the proceeds of the sale of said merchandise as money belonging to the said defendant corporation.
The answer further charges that the various assignments made to the petitioner by virtue of the agreement of December 22d 1939, were made without any present consideration at the time of the alleged transfer and assignments, and that the same constituted an unlawful preference in that they were made at a time when the defendant corporation was either insolvent or contemplated insolvency, of which the petitioner had knowledge thereof and hence invalid as against the creditors of the defendant corporation. *Page 542 
The receiver's view of the petitioner's position in these proceedings is not in accord with the petitioner's declaration that this court is without jurisdiction to consider the counter-claim. The petitioner's motion, he observes, is not directed to the receiver's answer to the petition — it applies only to the counter-claim.
The petitioner presumably admits the right of the receiver to raise an issue by his answer; but he disputes his right to set up any adverse claims arising out of the agreement.
The petitioner voluntarily came into this court and asked it to take jurisdiction of his cause, which relates to an agreement with an insolvent corporation. He attempts to confine the court's consideration to certain parts of the agreement and denies its authority to consider the effect of other portions of it. In my opinion, his position is legally unsound; it is not in accord with proper reasoning and equitable principles.
The petitioner leans heavily on the case of Daniel v.Guaranty Trust Company of New York, 285 U.S. 154; 52 S.Ct. 326.
In that case the Guaranty Trust Company filed a petition with the bankruptcy court by which it sought to reclaim certain bonds held by a trustee in bankruptcy. The trustee counter-claimed, demanding certain sums of money alleged to have been received by the petitioner which belonged to the trustee. The petitioner moved to strike the counter-claim charging it raised a new issue which could be raised only in a plenary suit. The motion was denied by the referee. The District Court affirmed him but the Circuit Court of Appeals reversed the District Court. The trustee appealed to the Supreme Court. It held the referee was without authority to entertain the counter-claim and quoted, with approval, the following language of the court below:
"`* * * The two proceedings were quite distinct. Appellant sought to recover certain bonds to which it claimed title. The trustee sought an order that appellant (bank) should pay over money of the bankrupt estate received by appellant, after bankruptcy. * * * We have been cited to no authority for the proposition that a creditor or other petitioner asking specific relief against a bankrupt's estate, as provided by the Bankruptcy act, thereby becomes subject to summary *Page 543 
orders by the referee in matters entirely disconnected from the subject-matter of such claim or petition, and no such authority is believed to exist."
The court went on further to state:
"In the circumstances, did the referee have jurisdiction to enter the turnover order against the trust company? The answer must be `No' unless that company by filing its petition for reclamation entered its general appearance and in effect consented to submit itself to summary proceedings before that officer in respect of matters having no immediate relation to the claim which it had presented."
The above case is cited in the later case of James M. Talcott,Inc., v. Glavin, 104 Fed. Rep. 2d 851; affirmed,308 U.S. 598. The facts in the Talcott Case closely resemble the situation here. There the appellant (who was the petitioning creditor) filed two petitions with the referee in bankruptcy to recover from the trustee of the bankrupt estate money paid and merchandise returned on accounts which allegedly were assigned prior to the bankruptcy, to the appellant. The trustee on behalf of the bankrupt estate, filed answers to these petitions and counter-claims in which, relying upon the invalidity of the assignments, the trustee prayed that the appellant (the petitioner) be required to return and surrender all of the accounts which remained uncollected, in whole or in part, and to turn over and account for all sums of money paid to or collected by it from these accounts within four months preceding the bankruptcy and subsequent thereto; to turn over and account for all merchandise returned to it on these accounts after the date of the bankruptcy; and to turn over and account for all money paid and merchandise returned on those accounts, the assignments of which were alleged to be unlawful preferences.
The appellant or petitioner contended therein that the answers and counter-claims of the trustee raised issues which could only be decided in a plenary suit. The Circuit Court of Appeals held:
"* * * By instituting proceedings to recover from the bankrupt estate property, the right to which was founded upon certain assignments made by the bankrupt, the appellant *Page 544 
placed before the referee all questions relating to their validity.
"In the counter-claims, the appellee is attempting to recover property in the possession of the appellant which it holds under a claim alleged to be bona fide and adverse to the bankrupt estate. If he had instituted summary proceedings to recover such property the District Court would not have had jurisdiction to consider the merits of the claim or to grant the prayer for relief, * * * unless it first determined that the appellant's claim to the property was not `real and substantial' but merely `colorable or fictitious' * * *, or unless the appellant gave its consent to the consideration of the merits in such an action. * * *
"However, in the present case, the summary proceedings were instituted by the appellant, not by the appellee. It is true that this fact alone would not confer upon the District Court jurisdiction to determine matters, raised by way of counter-claim, which were `entirely disconnected from the subject-matter of such claim or petition.' Daniel v. GuarantyTrust Co., 285 U.S. 154; 52 S.Ct. 326, 328; 76 L.Ed. 675.
However, the matters here raised in the counter-claims are closely connected with the `subject-matter of such claim or petition.' The appellant's claim to the property delivered to the bankrupt estate in full or part payment of certain accounts receivable depends upon the validity of the assignments of these accounts. Similarly, the appellee's counter-claims to the property delivered to the appellant in full or part payment of these same accounts depend upon the invalidity of the identical assignments upon which the appellant's claim is based. It is difficult to imagine more interrelated and closely connected conflicting claims. It is therefore obvious that the case ofDaniel v. Guaranty Trust Co., supra, is not decisive of the issues here involved.
"It is a well established principle of law that an `adverse claimant may waive his right to a trial of his claim in a plenary suit rather than by summary proceedings' and that he does so irrevocably when he `comes into the bankruptcy court of his own motion and asks it to determine the question of title * * *.' By instituting proceedings to recover the *Page 545 
property here involved, the appellant placed directly before the court the question of the validity of the assignments. Since it held property by reason of these same assignments, it in effect asked the court to determine its title and right to retain that property. * * *"
In the instant case, the petitioner is alleged to have received a preference in violation of section 64 of the General Corporation act in that assignments transferring the accounts receivable of the corporation were made at a time when the defendant corporation was insolvent, or had contemplated insolvency. In re Pennsylvania Coffee Co., 8 Fed. Rep. 2d98; In re Barnett, 12 Fed. Rep. 2d 73; Operators' PianoCo. v. First Wisconsin Trust Co., 283 Fed. Rep. 904.
In the case of In re Pennsylvania Coffee Co., supra, the United States District Court decided in favor of the receiver and directed the assignee to pay the balance found to be due by the referee. The court in that case, among other things, said:
"The precise question at issue here has been decided in favor of the receiver by the Circuit Court of Appeals of the Seventh Circuit in case of Operators' Piano Co. v. First WisconsinTrust Co., 283 Fed. Rep. 904, 906, in which Evans, Circuit judge, delivering the opinion of the court, says: `Likewise, where the adverse claimant is himself a petitioner for relief in a summary proceeding, he opens the door to such defenses as the trustee in bankruptcy possesses, and all such issues and all such defenses (including affirmative claims) may be properly litigated in that summary proceeding.'
 * * * * * * *
"We see no reason why the receiver in bankruptcy in this case should be put to a plenary action, when the claimants themselves have come into court and submitted themselves to its jurisdiction, and there is no dispute over the amount of money which the claimants, Tener and Slocum, have collected on the accounts assigned to them under the assignment of April 4th, 1924."
In the case of Operators' Piano Co. v. First Wisconsin TrustCo., supra, the court in part said:
"* * * a litigant cannot himself invoke the jurisdiction *Page 546 
of the court and the particular form of proceeding (summary as well as plenary) and then object to the disposition of the issues which the respondent (the trustee) may raise either as a defense to his petition or as the basis of a counter-claim. The consent thus given cannot be subsequently withdrawn."
The citations and quotations from the federal cases are authority for the doctrine that a receiver or trustee in bankruptcy may assert by way of counter-claim any claim which he may have against a petitioner who has invoked the jurisdiction of the court by the filing of a petition wherein the petitioner seeks affirmative relief against the receiver or trustee when the subject-matter of the counter-claim is relevant or interrelated to the subject-matter of the petition.
It is my belief that the reasoning of the federal court by way of analogy applies to insolvent proceedings in our state courts where a petitioner initiated a proceeding by petition in the original cause. The subject-matter of the counter-claim unquestionably is interrelated and relevant to the subject-matter of the petition; they both arise out of the same contract under thirty-six or thirty-seven assignments of various accounts receivable. The questions raised in the petition are identical with the questions raised in the counter-claim, viz., the validity of the agreement and the assignments.
The cases cited by the petitioner, viz., Daniel v. GuarantyTrust Co., supra; In re Keystone Press, Inc., 203 Fed. Rep. 710;In re Wood, 278 Fed. Rep. 355, as supporting his contention that he does not subject himself to the authority of this court to proceeding in a summary way against him, and that his petition does not constitute a consent by him to have the court consider his application in a summary manner, are distinguished and explained fully in the above cited cases of Talcott v. Glavin,supra; In re Pennsylvania Coffee Co., supra; In re Barnett,supra; Operators' Piano Co. v. First Wisconsin Trust Co.,supra.
Considering all the circumstances, the motion to strike the counter-claim is denied. *Page 547