[Sac. No. 244.   In Bank.—December 23, 1899.]

J. B. RUGGLES, Respondent, v. W. J. CANNEDY and THE BANK OF WINTERS, Appellants.

CHATTEL MORTGAGE—NECESSITY OF RECORD—INVALIDITY AS TO CREDITORS.—The record of a chattel mortgage upon personal property pursuant to section 2957 of the Civil Code is intended to take the place of the immediate delivery and continued change of possession of personal property required in other cases of ꞏꞏꞏꞏꞏ by section 3440 of that code; and if the mortgage is not ac edged or proved, certified, and recorded as required by s 2957, it is void as to the creditors of the mortgagor.

ID.—PROMPT RECORD ESSENTIAL—INSOLVENCY OF MORTGAGOR—DELA RECORD—SUBSEQUENT CREDITORS—ACTION BY ASSIGNEE.—A proɪ record of the chattel mortgage is essential in order to make valid as against the creditors of the mortgagor; and where tl record thereof was delayed for more than six months, and wa made only two days prior to the adjudication in insolvency of the mortgagor, the mortgage is void, especially as to the subsequent creditors of the mortgagor, who, without notice of the mortgage, rendered credit to him; and the assignee in insolvency, representing such creditors, who have proved their claims, may maintain an action to have the mortgage adjudged null and void as to them. [Garoutte, J., Van Dyke, J., and Harrison, J., dissenting.]

ID.—GENERAL RIGHTS OF CREDITORS—SPECIFIC LIEN OR INTEREST.—In general, a creditor at large cannot set aside a chattel mortgage for want of record, or any transfer of personal property for want of an immediate delivery and change of possession, if he

has not first acquired an attachment lien, or a judgment and levy under execution or some specific interest in the mortgage property.

ID.—PREVENTION OF SUIT BY INSOLVENCY—PROOF OF CLAIMS AGAINST INSOLVENT DEBTOR — REPRESENTATION OF INTEREST BY ASSIGNEE.— Where creditors of an insolvent mortgagor of personal property are prevented from suing by reason of the adjudication of his insolvency, and are limited to the proof of their claims against him, such proof is the equivalent of a judgment, and shows sufficient interest of the creditors in the mortgaged property to warrant the assailing of the chattel mortgage as a void act for want of prompt record, and the assignee in insolvency represents the interest of the creditors, and may recover the property for their benefit.

ID.—VOLUNTARY INSOLVENCY — EFFECT OF ADJUDICATION.—Where the debtor goes into voluntary insolvency, the adjudication in insolvency, in the absence of a showing to the contrary, is sufficient proof of the inadequacy of the property to pay the debts in full to justify a proceeding, on behalf of the creditors, to avoid a transfer or chattel mortgage which is void as to the creditors.

ID.—CODE PROVISIONS AS TO ASSIGNEE—GENERAL POWER UNDER INSOLVENT ACT.—The inclusion of the assignee in insolvency in section 3440 of the Civil Code, and the omission to refer to him in section 2957 of that code, does not affect the general power of the assignee in insolvency conferred by the Insolvent Act to represent the insolvent estate, and to maintain suits for the benefit of the creditors of the insolvent debtor in cases arising under section 2957.

APPEAL from a judgment of the Superior Court of Yolo County and from an order denying a new trial. W. H. Grant, Judge.

The facts are stated in the opinion of the court.

Charles W. Thomas, for Appellants.

Section 3440 of the code has no application to statutory chattel mortgages allowed by law, as distinguished from common-law mortgages of chattels. (*Rohrbough v. Johnson*, 107 Cal. 144; *Bank of Ukiah v. Moore*, 106 Cal. 673.) The action cannot be sustained as one brought under section 55 of the Insolvent Act, there being an entire absence of fraud. (*Matthews v. Chaboya*, 111 Cal. 435; *Hass 'v. Whittier-Fuller Co.*, 87 Cal. 613.) Nor can it be sustained as brought under sections 3439 and 3442 of the Civil Code, there being no intent to hinder or delay or defraud creditors. The right of creditors to attack a mortgage as

fraudulent does not pass to the assignee. (*Sandwich Mfg. Co. v. Wright*, 22 Fed. Rep. 631; cited with approval in *Francisco v. Aguirre*, 94 Cal. 180, 186, and *Babcock v. Chase*, 111 Cal. 351, 353.) Where the statute does not otherwise specify, a chattel mortgage may be recorded any time before specific liens or interests are acquired by others. (Jones on Chattel Mortgages, sec. 237.) No creditor who has not acquired a specific interest or lien can avoid an unfiled chattel mortgage. (*Thornburg v. Hand*, 7 Cal. 554; *Jones v. Graham*, 77 N. Y. 628; *Kitchen v. Lowery*, 127 N. Y. 53; *Cameron v. Marvin*, 26 Kan. 612 (627); Jones on Chattel Mortgages, sec. 245; Bump on Fraudulent Conveyances, secs. 450, 451; *Brown v. Campbell*, 100 Cal. 635; 38 Am. St. Rep. 314; *Tremaine v. Mortimer*, 128 N. Y. 1; *Button v. Rathbone*, 126 N. Y. 187; *Hicks v. Williams*, 17 Barb. 527.) An unfiled chattel mortgage good between the parties is good as against the assignee in insolvency of the mortgagor. (*Stewart v. Platt*, 101 U. S. 731 (739); *Overstreet v. Manning*, 67 Tex. 657; *Ransom v. Schmela*, 13 Neb. 73; *Gilbert v. Vail*, 60 Vt. 261; *Folsom v. Clemence*, 111 Mass. 273; *Chase v. Denny*, 130 Mass. 566.)

Philip Bruton, for Respondent.

The assignee in insolvency is not confined to powers given under section 55 of the Insolvent Act, but he represents the entire estate, under section 17 of that act, and he may set aside any transfer void as to the creditors, without reference to any question of fraud. (*Merrill v. Hurlburt*, 63 Cal. 494; *Brown v. Bank of Napa*, 77 Cal. 544.) The record in section 2497 of the Civil Code is the substitute for the delivery and change of possession of section 3440, and should be immediate. (*Berson v. Nunan*, 63 Cal. 550 (552); 2 Bigelow on Frauds, 252, 348; Bump on Fraudulent Conveyances, sec. 110, p. 113.) An unrecorded mortgage is void as to intervening creditors. (*Noyes v. Brace*, 8 S. Dak. 190; *Root Co. v. Harl*, 62 Mich. 420; *Sanger v. Guenther*, 73 Wis. 354; *Putnam v. Reynolds*, 44 Mich. 114; *Ryan Drug Co. v. Hoambsahl*, 89 Wis. 61; *Dempsey v. Pforzheimer*, 86 Mich. 652; *Crippen v. Jacobson*, 56 Mich. 386.) The adjudication of insolvency in the absence of a showing to the contrary is sufficient proof of the inadequacy of the estate to

pay indebtedness. (*Turner v. Adams*, 46 Mo. 95; *Case v. Beauregard*, 101 U. S. 688.) The assignee in insolvency represents the creditors, who can only prove their claims, and cannot sue. (Insolvent Act 1880, sec. 45; *Schaller v. Wright*, 70 Iowa, 677; *Bingham v. Jordan*, 1 Allen, 373, 374; 79 Am. Dec. 748; *Pratt v. Curtis*, 2 Low. 87, 89; *Shackleford v. Collier*, 6 Bush, 149, 154; *Moore v. Young*, 4 Biss. 128, 132-36; *Walter v. Dashiell*, 1 Md. 455, 469, 470; *Diggs v. McCullough*, 69 Md. 592, 609; *Pillsbury v. Kingon*, 33 N. J. Eq. 283 (291); *Lindeman v. Ingham*, 36 Ohio St. 1; *Mann v. Flower*, 25 Minn. 503; *Southard v. Benner*, 72 N. Y. 427; *Shipman v. Aetna Ins. Co.*, 29 Conn. 252.)

THE COURT.—Upon further consideration we adhere to the following opinion and judgment heretofore rendered in Department:

"HENSHAW, J.—This action is brought by the assignee in insolvency of one Wilgus, seeking a decree declaring void against creditors a chattel mortgage executed by Wilgus to defendant Cannedy. The appeal is from the judgment upon the judgment-roll alone. The findings of fact negative all claim of actual fraud and of a violation of the provisions of the insolvency act. The mortgage was made upon February 17, 1893, for a valuable consideration, and for a like consideration was assigned to the defendant bank, which took without knowledge of Wilgus' contemplated insolvency. It was not recorded, however, until August 26, 1893, six months later, and two days before Wilgus, under his voluntary petition, was declared an insolvent. Intermediate the time of giving and the time of recording the mortgage Wilgus incurred debts, some of which were proved and allowed in the insolvency court. The creditors knew nothing of the mortgage until its recordation. The court, at the suit of the assignee, under the facts adjudged the mortgage to be null and void as to these creditors.

"Two leading questions are thus presented: 1. Is a chattel mortgage, withheld from record beyond a time reasonably necessary for its prompt recordation, void against creditors whose claims have arisen between the date of its execution and the date of its recordation? 2. May such a mortgage be declared void at the instance of the assignee in insolvency on behalf of

such creditor whose claim has been proved and allowed against the estate of the insolvent mortgagor?

"Respondent, of course, maintains that both these interrogatories should be answered in the affirmative. Appellants oppose this, insisting that our recordation laws do not compel nor contemplate an immediate recordation of a chattel mortgage; that, if the mortgagee delays recordation, he merely takes the risk of losing his lien by a sale to an innocent purchaser, or of having it subordinated to that of creditors who have acquired superior rights by judgments, attachments, or executions; that whenever recorded the mortgage is valid against all creditors, saving those who have themselves acquired prior liens; and, finally, that in any event the mortgage recorded before insolvency, and not in violation of the insolvency law, may not be set aside at the instance of the assignee, who represents the insolvent, and who has no rights in the matter which the insolvent himself did not possess. As the unrecorded mortgage is valid between the mortgagee and the insolvent, as in its execution and delivery there was no fraud upon the insolvency law, and as no creditor has acquired a lien upon the mortgaged property before recordation, it is argued that the contract of mortgage is valid as to the assignee.

"The determination of the first question must depend upon the language of our codes, and upon the policy of the law deducible therefrom.

"In the early jurisprudence of the state, the law touching sales and mortgages of personal property was found in one and the same 'act concerning fraudulent conveyances and contracts.' (Stats. 1850, p. 266.)

"By section 15 of that act it was provided: 'Every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery and be followed by an actual and continued change in possession of things sold or assigned, shall be conclusive evidence of fraud as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith.'

"In section 17 it was declared: 'No mortgage of personal property hereafter shall be valid against any other persons than

the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee.'

"Recordation at that time was unknown. Delivery and possession of the mortgaged chattel were required. But it is to be noted that, while as to sales the statute expressly demanded an immediate delivery, there was no such explicit exaction in the terms of the law governing mortgages. At a very early day this fact was called to the attention of the court, and upon it was attempted an argument of some substantial difference between the law governing sales and that governing mortgages. Thus, in *Chenery v. Palmer*, 6 Cal. 119, 65 Am. Dec. 493, we find the appellant complaining of an instruction by the lower court that to render a chattel mortgage valid against creditors there must be an immediate delivery. In *Hackett v. Manlove*, 14 Cal. 85, it is argued that such a mortgage is good against those who were not creditors, even after delayed possession taken. Finally, in *Woods v. Bugbey*, 29 Cal. 466, this court treated the question at length, and held that, as to delivery and change of possession, the same principle and rule applied whether the sale was absolute or conditional by way of mortgage. First quoting from *Lay v. Neville*, 25 Cal. 552, to the effect that the delivery must be immediate, it continued: 'The rule which our statute prescribes admits of no excuse dispensing with an actual and continued change of possession of the property sold, assigned, or mortgaged.'

"There is thus no room left for doubt but that the law of 1850 rendered void, at the instance of creditors, a chattel mortgage, unless it was accompanied by an immediate delivery and by an actual and continued change of possession of the property affected.

"In time this statute of 1850 was repealed, and in place of the sections we have been considering were substituted the following code provisions:

" 'Every transfer of personal property, . . . . and every lien thereon other than a mortgage when allowed by law, . . . . is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be

fraudulent, and therefore void against those who are his creditors while he remains in possession, and the successors in interest of such creditors, and against any persons on whom his estate devolves in trust for the benefit of others than himself, and against purchasers or encumbrancers in good faith subsequent to the transfer.' (Civ. Code, sec. 3440.)

. " 'A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith, and for value, unless: 1. It is accompanied by the affidavit of all the parties thereto that it is made in good faith, and without any design to hinder, delay, or defraud creditors; 2. It is acknowledged or proved, certified and recorded in like manner as grants of real property.' (Civ. Code, sec. 2957.)

"Thus, in the case of the articles of personal property enumerated in section 2955 of the code, recordation became a substitute for delivery and change of possession. 'The recording of the mortgage is, therefore, made by the code the equivalent of an immediate delivery and continued change of possession.' (*Berson v. Nunan,* 63 Cal. 550; *Martin v. Thompson,* 63 Cal. 3.)

"But here it is argued that, while the law makes recordation the substitute for an immediate delivery, it does not mean or require immediate recordation, but only provides that, when effected, recordation is the equivalent of immediate delivery and continued and actual change of possession. Considering that the law demands immediate delivery, and that recordation is but a substitute for it, it is not easy to see how an indefinitely delayed recordation may be said to take the place of an actual, immediate delivery. One being designed as a substitute for the other, what is the condition, in the one case, if the property be not immediately delivered? Indisputably, the mortgage is void as to creditors. What, then, is the condition in the other case for the indefinite period during which there has been no recordation? While recordation is lacking there is not only no equivalent for an immediate delivery, but there is no delivery at all. Recordation itself is the substitute for delivery.

"A prompt recordation most obviously takes the place of an immediate delivery, and a delayed recordation of a tardy delivery. How, then, can a recordation effected one year

or ten years after the execution of the mortgage be said to be the equivalent of the delivery which by the law is required to be made with all reasonable dispatch? Even more untenable does this argument seem when consideration is had for the manifest policy of these laws. The very object of them all, the reason for their being, is to prevent secret liens upon and interests in personal property. Says Chancellor Kent (2 Kent's Commentaries, *523): 'The policy of the law will not permit the owner of personal property to create an interest in another, either by mortgage or absolute sale, and still continue to be the visible owner. The law will not stop to inquire whether there was actual fraud or not, for it is against sound policy to suffer the vendor to remain in possession. . . . . It necessarily creates a secret encumbrance as to personal property, when to the world the vendor or mortgagor appears to be the owner, and he gains credit as such, and is enabled to practice deceit upon mankind.' In *Palmer v. Howard,* 72 Cal. 293, it is said: 'It must be remembered, in general, that the policy of the law is against upholding secret liens and charges to the injury of innocent purchasers or encumbrancers for value, and, in particular, that mortgages of personal property are permitted only in certain specified cases, and this only upon the observance of certain formalities designed to secure good faith, and to give notice to the world of the character of the transaction.' This language has very recently been quoted with approval in *Stockton Sav. etc. Soc. v. Purvis,* 112 Cal. 236; 53 Am. St. Rep. 210.

"With this for the unquestioned policy of the law, how can it successfully be urged that an interpretation which fosters and encourages the very evil which the law was designed to check can be the true one? A mortgage without immediate delivery would create a secret lien, admittedly void against creditors. Is a mortgage without immediate recordation any less a secret lien, or any less an evil to be avoided? Prior to the amendment to section 2955 of the Civil Code, adopted in 1895, as counsel well instance, if a person had desired to borrow money upon his farming implements he would have been compelled to transfer possession immediately under section 3440 of the Civil Code. By the amendment these implements are placed in

the list of those upon which statutory chattel mortgages may be given. Therefore, he may now make such a mortgage upon them without delivery. Did the legislature intend to accommodate the farmer by enabling him to retain possession and use of his property, while at the same time protecting the public by recordation? Or did it design to make fraud easier by framing an ever-increasing list of articles upon which might be placed secret liens? The mortgagor holding possession could thus obtain credit upon the strength of his apparent untrammeled ownership, while the mortgagee could defeat the creditors' recovery by recording his mortgage at any time before the levy of an attachment.

"*Fassett v. Wise,* 115 Cal. 316, which appellants cite, is not in point upon the proposition we have been considering. This court was there called upon to construe the sections of the Civil Code (2959, 2965) dealing with the place of recordation. It was insisted that the mortgage having been executed in Kings county, and the sheep having been removed thence to Tulare county before recordation anywhere, there was allowed under section 2965 of the Civil Code thirty days after such removal in which to record in Tulare county. It was decided that this section did not apply; that the mortgage was not recorded, and, therefore, not a mortgage at all as to creditors until after it had been placed on record both in Kings county and Tulare county. The effect as to creditors of the tardy recordation in Kings county was not determined.

"We conclude upon this question that our law requires immediate recordation in lieu of immediate delivery, and that when such recordation is not effected the mortgage 'is void as against creditors of the mortgagor.' The penalty for a failure to record promptly in the case of a mortgage is identical with the penalty under section 3440 for a failure to deliver promptly in the case of a sale. In either case the failure results in a legal fraud against those whom the statute enumerates and protects. Section 3440 excepts a 'mortgage when allowed by law' from the requirement of immediate delivery, because, and only because, the recordation takes the place of delivery. It certainly cannot be said that it was the design of the legislature to exclude the articles of personal property affected by such

mortgages from the operations of the laws forbidding secret liens.

"But this, it is to be noted, does not mean that such a mortgage between the parties, and as to all the world, is absolutely void like an unrecorded builder's contract under the mechanic's lien law. It does mean, however, that it may be avoided at the instance of anyone in the enumerated classes—creditor, purchaser, or encumbrancer—whose right accrues during the time the recordation is withheld. Between the parties the unrecorded mortgage is, of course, valid. It is likewise valid against any creditor, purchaser, or encumbrancer whose claim arises after recordation. So, too, the mortgagee's interest in or title to the chattel affected by the unrecorded mortgage may be successfully asserted against a mere trespasser. Whether it is void against a creditor who extended credit before the making of the mortgage does not here call for decision. Suffice it to say that upon this, as well as upon many other questions concerning chattel mortgages, an irreconcilable conflict in the decisions of the courts upon statutes practically identical in language will be discovered. In illustration of this may be cited *Stephens v. Perrine,* 143 N. Y. 476; *Dempsey v. Pforzheimer,* 86 Mich. 652.

"But it is insisted that, even if an unrecorded mortgage is void at the instance of creditors, only those creditors may take advantage of the law who by judgment and execution levy, or at least by attachment levy, have acquired a lien upon the property before recordation. In this appellants place reliance upon section 237 of Jones on Chattel Mortgages, and upon the authorities which the learned author cites in support of his text. He speaks as follows: 'The only effect of delay in recording or filing a mortgage is to render it void as against intervening purchasers or mortgagees, or creditors obtaining liens by attachment, judgment, or execution. If the time within which a mortgage must be recorded or filed be not expressly prescribed by statute, it is sufficient that this be done at any time before possession is taken, or interest or liens are acquired by others, no matter how long this be after the execution of the mortgage. The record of a mortgage being only a substitute for the mortgagee's possession, it follows that, in the absence of any record, possession taken by the mortgagee before others have acquired any interest in the property makes his mortgage lien complete.'

"To this the answer is that such is not the law of this state. In terms, this rule is limited to those cases where immediate recordation is not required by law, and in our state, as has been discussed, as well as in other states under similar and wellnigh identical statutes, as will be shown, immediate recordation is exacted. Again, as we have seen, a perfect analogy exists in our law between the case of sales and the case of mortgages of personal property. In both, immediate delivery, or its equivalent—immediate recordation—must take place. In each the result of a failure in this particular is to render the contract absolutely void as to creditors. In *Watson v. Rodgers*, 53 Cal. 402, it is held that a sale of personal property unaccompanied by an immediate delivery is void as to creditors, notwithstanding the delivery was effected before the creditors acquired a lien by attachment levy. In *Chenery v. Palmer*, *supra*, it is decided that, whether the contract is a sale or a mortgage, in either event, not being followed by immediate delivery, it was void as to creditors, though delivery was made before levy. In other words, two distinct propositions have thus been decided: 1. That neither in the case of a sale nor of a mortgage would a delayed delivery validate the contract against creditors; and 2. That it was not necessary that these creditors should have acquired rights by judgment or attachment before delivery of the chattel sold or mortgaged to warrant their setting aside the transfer. Our recordation laws, admittedly being but a substitute for such immediate delivery, certainly have not changed the principles here announced, and should not be said to have changed the rule which elsewhere finds abundant support.

"It is recognized that the authorities are in conflict upon this proposition, and that in some states it is held that a creditor must have acquired a lien before recordation of the mortgage, else it is valid against him. Such we have said is not the rule in this state. It is not the rule in Oregon, whose law provides: 'A mortgage of personal property is void as against creditors of the mortgagor . . . . unless it is recorded in the same manner as is required by law in conveyances of real property.' (Or. Gen. Stats., sec. 1648; *Willamette Casket Co. v. Cross, etc.*, 12 Wash. 190.) The same may be said of Wisconsin, whose statute

is as follows: 'No mortgage of personal property shall be valid as against third persons unless the property be delivered to and retained by the mortgagee, or unless the mortgage or a copy thereof be filed.' (Wis. Rev. Stats., sec. 2313; *Ryan Drug Store Co. v. Hoambsahl,* 89 Wis. 61.) The Michigan statute provides (Howell's Ann. Stats. of Mich., sec. 6193): 'Every mortgage or conveyance intended to operate as a mortgage of goods and chattels, which shall hereafter be made, which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession of the thing mortgaged, shall be absolutely void as against the creditors of the mortgagor, . . . . unless the mortgage or a true copy thereof shall be filed in the office of the township clerk,' etc. In *Crippen v. Jacobson,* 56 Mich. 386, and in *Dempsey v. Pforzheimer, supra,* it is held that such mortgages, under the law as quoted, are absolutely void against creditors whose claims have arisen during the time they were withheld from recordation, notwithstanding the fact that they had acquired no lien upon the specific property until after recordation or possession taken. Without further quotations, it is sufficient to cite additionally upon this point the cases of *Noyes v. Brace,* 8 S. Dak. 190; *Thompson v. Van Vechten,* 27 N. Y. 581; *Karst v. Gane,* 136 N. Y. 316; *Stephens v. Perrine, supra; Roe v. Meding,* 53 N. J. Eq. 350; *Simpson v. Harris,* 21 Nev. 353; *Farmers' etc. Bank v. Anthony,* 39 Neb. 343; *Kimball Co. v. Kirby,* 4 S. Dak. 152.

"Of course, it is true in general that a creditor at large of the mortgagor cannot set aside a mortgage for lack of recordation, any more than can such a creditor set aside a sale void for want of immediate delivery. He must come first with his judgment lien, execution levy, attachment, or some other process or right by which he has acquired a specific interest in or claim upon the particular property. But since, as has been discussed, he may acquire this lien or right after recordation, and since, when acquired, the mortgage is void as to him, it makes little difference whether it be stated as the rule that the law requires immediate recordation, or whether it be said that, while it does not require immediate recordation, the mortgage is void as to creditors who have become such during the time recordation has been delayed. It is but a change in the form of words,

while all of the legal effects remain the same. The law may be said to contemplate or require immediate recordation because the rights of creditors arising before recordation are superior to those of the mortgagee, or it may be said that, while the law does not exact immediate recordation, it renders the mortgage void as to such creditors, unless it be so recorded. In both cases the results are identical, and over any precise form of expression there need be no haggling.

"In this case the creditors had not obtained judgments against the mortgagor, nor indeed had they instituted any proceedings against him at the time he was adjudged an insolvent. After that judgment, by force of the insolvency act itself, they were prevented from resorting to any proceeding in law or equity for such purpose. They were limited to the presentation of claims in the insolvency court. This they did, and when those claims were allowed and approved the questions involved in them became *res judicata.* The presentation, allowance, and approval of the claim, while not in strictness a judgment, had much of the force and effect of a judgment, and was the only thing in the nature of a judgment which creditors so situated could obtain. For the purpose of enforcing their rights against fraudulent or void acts of the insolvent, it is the equivalent of a judgment. (*Roan v. Winn,* 93 Mo. 503.)

"We are not advised, nor do we understand it to be the rule in this state, that a judgment creditor must exhaust all other property before avoiding a sale, transfer, or mortgage by his debtor, which by the law is declared as to him void, or a fraud upon his rights. But, if it should be said that it is necessary for the creditor to show that he cannot otherwise make good his debt, we think a sufficient showing to that end is made in this case by the undenied averment of the debtor's voluntary insolvency. Insolvency in the law has two distinct and well-defined significations. Anderson, in his Law Dictionary, defines an insolvent as 'a person who is not pecuniarily able to pay his debts as they fall due; also a person whose property, if distributed among his creditors, would not be sufficient to pay their claims in full.' Our insolvency act recognizes these distinct meanings. In proceedings for involuntary insolvency (Insolvent Act, sec. 8), aside from the acts of fraud therein enumerated,

one may be cast into insolvency who is shown to be unable to meet his debts as they fall due; yet his assets may be ample for the full payment of his debts, though not immediately available for their prompt payment. But where one voluntarily seeks the benefit of the act he may not aver his inability to pay his debts as they fall due, but by verified petition must allege 'his inability to pay all his debts in full,' and the adjudication in insolvency is made pursuant to that allegation. In such a case certainly the adjudication of insolvency, in the absence of a showing to the contrary, is sufficient proof of the inadequacy of the property to pay the debts in full. (*Turner v. Adams*, 46 Mo. 95; *Case v. Beauregard*, 101 U. S. 688.)

"2. We are come now to consider whether the assignee representing these creditors whose claims have been proved and allowed may institute on their behalf an equitable action to avoid the mortgage, an action which, but for the insolvency of the debtor, the creditors themselves unquestionably could have maintained after pressing their debts to judgment. The assignee's right so to do is combated upon two grounds: 1. Because, while section 3440 of the Civil Code declares that a transfer or lien upon personal property may be avoided at the instance of the creditor, or of him upon whom the estate of the debtor devolves in trust, no such expression is found in section 2957, which declares merely that a mortgage of personal property is void as against creditors, not expressly including either successors in interest or trustees; 2. It is contended that, in any event, the assignee in insolvency can attack the acts of the insolvent on behalf of the creditors only for actual fraud, and that the act here contemplated is but a constructive legal fraud. It may here be suggested that this so-called legal fraud was, if anything, a fraud, not of the mortgagor, who is to suffer nothing by it, but of the mortgagee, who may be compelled to lose his lien for his own remissness and neglect. Says Mr. Justice Cooley, in *Putnam v. Reynolds*, 44 Mich. 114: 'Even creditors, it is said, cannot attack the mortgage, except indirectly through a seizure of the property by attachment, or other suitable process. This is doubtless true where the invalidity of the mortgage arises from the fraud of the mortgagor; but whether the same rule will apply when the mortgage was originally valid, but

is made void by the neglect of the mortgagee, may well be questioned. It would be easy to suggest weighty considerations arising in such cases, but not existing in the case of a fraudulent mortgage, and which it might well be thought should control.' We do not regard the omission in section 2957 of the Civil Code to declare that those upon whom the estate of the debtor may devolve in trust have the right to avoid the mortgage, as being at all important. It was early held under the English statutes of George the Fourth (1 George IV, c. 119; 7 George IV, c. 57), which conferred no right upon the assignee in insolvency to avoid conveyances of the assignor, and in cases where this fact was pressed upon the attention of the court, that the assignee had this right by virtue of the fact that he represented the creditors. (*Butcher v. Harrison,* 4 Barn. & Adol. 129; *Doe v. Ball,* 11 Mees. & W. 531; *Norcott v. Dodd,* 1 Craig & P. 100.) In *Holmes v. Penney,* 3 Kay & J. 90, a bill was brought by the assignee in insolvency. Vice-Chancellor Wood, discussing his right so to do, said: 'I have no doubt of the right of the assignee in insolvency to sue in the case. In *Doe v. Ball, supra,* Baron Parke and the present lord chancellor decided that an assignee in insolvency might properly represent all the creditors in proceedings to set aside an instrument which any of the creditors might have instituted.' The failure to observe the well-defined distinction between the powers of the assignee in insolvency, who thus represents the creditors, and those of an assignee for the benefit of creditors, who is the representative of the assignor, has led to much conflict of authority upon this question. In this state, it is held that an assignee for the benefit of creditors may not maintain such an action, but the distinction between such an assignee and the assignee in insolvency is clearly pointed out. Thus, in *Francisco v. Aguirre,* 94 Cal. 180, in discussing the conflict of authority which exists upon the question, it is said: 'In other states the assignee for the benefit of creditors has been held to have such right upon the ground that by virtue of statutory provisions the assignment partakes so far of the nature of a proceeding in bankruptcy that the assignee succeeds to the same rights as does an assignee in bankruptcy.'

"*Merrill v. Hurlburt,* 63 Cal. 496, and *Brown v. Bank of*

*Napa*, 77 Cal. 544, were both by the assignee in insolvency to
set aside a sale of personal property for legal fraud. In both
the action was upheld. It is determined, therefore, in this
state that the powers of the assignee in the premises are not
limited to cases of fraud in fact.

"But, independent of these reasons, there is still another con-
sideration by which such an action as this upon the part of the
assignee in insolvency is justified and upheld. By sections 18
and 21 of the Insolvent Act all of the estate of the insolvent
passes to the assignee. As is said in *Brown v. Bank of Napa,*
*supra:* 'The assignee has the right to sue for and recover every-
thing due to the estate for the benefit of the creditors.' While,
as between the assignor and his vendee or mortgagee, the trans-
action is valid, as between him and his creditors it is void, and
the title still remains in him. This title passes to the assignee
in insolvency for the benefit of the creditors, and justifies him
in maintaining an action in their behalf to reduce the property
to possession. 'The statute provides for the assignment of
property by insolvents to the end that it may be appropriated to
the payment of debts. It authorizes proceedings to subject the
property of debtors to the payment of their debts. As between
the creditors and the debtor who fraudulently conveys property
to defeat them, he is regarded as holding the title to or an in-
terest in the property conveyed, and it may for that reason be
made subject to his debts. If he holds no such interest, the
law will not permit the creditors to appropriate the property,
for it would not suffer the property of another to be taken for
his debts. It thus appears that the debtor did hold as to the
creditors an interest in the property, and that it passed to the
assignee. It is said that the assignee takes the derivative title
from the debtor and stands in his shoes. This is correct so far
as persons other than creditors are concerned. As we have seen,
as to creditors the assignee is regarded by law as holding an in-
terest in and title to the land.' (*Schaller v. Wright*, 70 Iowa, 667;
*Jones v. Yates*, 9 Barn. & C. 532; *Pillsbury v. Kingon*, 33 N. J.
Eq. 287.) By reason of the title which is thus vested in him
we hold that the assignee may maintain this action.

"It is said that the judgment should not be upheld because
CXXVII. CAL.—20

of the absence of a finding that the recordation was not seasonably made. It is averred, and not denied, that six months elapsed between the making and the recording of the mortgage. This unexplained delay would, as matter of law, and without a finding, be sufficient to show that the recordation was not seasonable. Or, taking it in the other view which has been presented, even if it be said that the law does not require immediate recordation, still the mortgage is void as to those who during the time that the mortgage has been withheld from the records have given credit to the mortgagor, and it is in favor of these that the mortgage has been set aside.

"The judgment appealed from is affirmed."

GAROUTTE, J., dissenting.—I dissent from the conclusion declared in this case. I do not believe the bar of this state construe the law upon this question as it is here construed, and owing to the important principle involved I feel compelled to briefly indicate why this case should be decided the other way.

The true solution of the question raised upon this appeal is dependent upon the construction to be given section 2957 of the Civil Code, which provides: "A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers in good faith and for value, unless: 1. It is accompanied by the affidavit of all the parties thereto that it is made in good faith and without any design to hinder, delay, or defraud creditors; 2. It is acknowledged or proved, certified, and recorded in like manner as grants of real property."

By virtue of the foregoing provision of the code it is now held that a chattel mortgage must be immediately recorded upon its execution, or, *ipso facto*, it is void as to creditors; and the fact that the mortgage may be recorded before any creditor takes a single step toward judicially enforcing his claims is a matter wholly immaterial. The inevitable result flowing from this decision will be to stamp many chattel mortgages as worthless property, when up to the present moment their genuineness has never been doubted. The serious results to follow from thus holding should lead the court to an opposite conclusion if a fair construction of the statute justifies it. For the simplest of reasons it is apparent that it would be work well done to de-

clare the principles of law governing the recording of chattel mortgages to be similar to those governing the recordation of mortgages of real estate; for the law as to the effect of recordation of mortgages upon real estate is well defined and understood. And now, if in the case of chattel mortgages we declare the same principles to be controlling, a broad road is marked out which all may follow. But a decision to the contrary simply blots out all roads. If it be held under this statute that chattel mortgages similar to the one here involved are void as to creditors, the decision will produce an abundant crop of litigation. This litigation will not only arise upon the rights of creditors as bearing upon chattel mortgages now outstanding, but as long as the statute stands it will be a prolific source of litigation as to the respective rights of creditors and mortgagees.

I am satisfied the provisions of the code only mean that unrecorded chattel mortgages are void as to creditors who assert their claims by attachment or otherwise before a recordation is had. This construction may be maintained without violating any principle of statutory interpretation, and for the reasons already suggested, if for no other, the court should so declare. I know of no reason based upon sound policy which may be urged in favor of a contrary construction. It is suggested in the majority opinion that such a construction of the statute cannot be declared because the policy of our law is opposed to secret liens. But my construction of the statute is directly in line with a policy opposed to secret liens. Until the chattel mortgage is recorded it is void as to third parties, and is only valid between the parties. A mortgage only valid between the parties is in no sense a secret lien as to third parties, and public policy is in no way concerned in such a mortgage. Men may pass their days and nights in mutually giving each other chattel mortgages upon their property, and it is no concern of the public. The public has no interest in that kind of a transaction, but is a totally indifferent party.

In a great many of the states the statute does fix the time when a chattel mortgage must be recorded. In Ohio, where the statute even declares that a chattel mortgage shall be recorded "forthwith," under the penalty of being void as to creditors if not so recorded, the highest court of that state held such a mort-

gage valid as against all creditors whose rights had not attached previous to the recordation. (*Wilson v. Leslie*, 20 Ohio, 161.) But we will not attempt a review of the authorities of other states bearing upon the question here involved. It is sufficient to say they are irreconcilable, although it may be safely claimed that a large preponderance are favorable to the conclusion we here declare. Some of these authorities are incidentally enumerated in the case of *Fassett v. Wise*, 115 Cal. 322.

Section 3440 of the Civil Code, among other matters, declares: "Every transfer of personal property, . . . . and every lien thereon, other than a mortgage, when allowed by law, . . . . is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred to be fraudulent, and therefore void, against those who are his creditors while he remains in possession." It is now sought by a process of reasoning by analogy from the provisions of section 3440 to construe the aforesaid section upon chattel mortgages as requiring an immediate recordation of the mortgage. Reasoning by analogy is not the best mode of reasoning, and conclusions thus deduced are often unsound. It may be further suggested that in a proceeding purely and entirely statutory the word "immediately" should not be construed into the statute by a process of analogous reasoning. If *quasi* judicial legislation is ever justified, it should rest upon a stronger foundation. If the legislature thought that chattel mortgages should be recorded immediately, it was a very easy matter for that body to have said so; and we see no authority to justify this court in invoking the provisions of section 3440 as to sales of personal property for the purpose of assisting in the construction of section 2957 as to chattel mortgages.

Section 2957 of the Civil Code was ingrafted therein in lieu of an act of the legislature of 1857 covering the whole question of chattel mortgages, and not, as the main opinion declares, in place of the statute of 1850. Whatever analogy existed under the act of 1850 between sales and mortgages of personal property was completely annihilated when the chattel mortgage act of 1857 was passed. An examination of a few of the provisions

of that act shows this to a demonstration. For those provisions are directly opposed to the principles of law declared in the act of 1850, and likewise directly opposed to the decisions of this court, cited in the main opinion, rendered under the act of 1850. And I feel assured they are likewise opposed to the principles recognized and approved upon which the present decision of the court is rested. The act of 1857, section 7, provides: "The mortgagee in all mortgages made under this act shall be allowed one day for every twenty miles of the distance between his residence and the county recorder's office where such mortgage ought by law to be recorded to conform to the provisions of this act, before any attachment shall be valid made by the creditors of the mortgagor." This was the law at the time the code was adopted, and it is therefore evident that the statute at the time pertaining to the sale and transfer of personal property had no relationship whatever with the execution and recordation of chattel mortgages. Again, the subject matter of section 2957 of the Civil Code is found in this chattel mortgage act of 1857. Yet that act itself, in section 7, which I have just quoted, places a construction upon those provisions entirely in line with my conclusion, and that construction should have great weight in deducing the proper conclusion in this case. Section 7 provides that the mortgagee shall have a certain number of days— dependent upon the distance he lives from the recorder's office —in which to record his mortgage before it shall be void as to attaching creditors. If respondent's position be the sound one, then that provision of the act should have simply said "creditors," and should have omitted any qualifications whatever as to attaching creditors. Indeed, the substance of this identical provision of the chattel mortgage act of 1857 was carried into the original enactment of the Civil Code. (Civ. Code, sec. 2937.) This section conclusively demonstrates that the close relationship existing in the early legal history of this state between chattel mortgages and sales of personal property never existed after 1857.

Let us see into what deep water this reasoning by analogy leads us. If by analogy we are justified in inserting the word "immediately" in the chattel mortgage act, then, by the same analogy, it must be held that a chattel mortgage is void as to all

creditors of the mortgagor having claims at any time during the period between the execution of the chattel mortgage and its recordation. Indeed, it has been held by this court in *Cardenas v. Miller*, 108 Cal. 258, 49 Am. St. Rep. 84, that: "The term 'creditors' is general and applies to creditors existing prior to the mortgage as well as subsequent." Yet it is not even claimed here that this mortgage is void as to creditors existing at the time it was executed, and no such claim can be made, for then the whole superstructure of the court's reasoning, builded story after story upon the theory of the creation of a false credit in the mortgagor and a public policy opposed to secret liens, would come down with a crash; for, as to creditors in existence prior to the execution of the mortgage, there would be no false credit in the mortgagor and no secret lien in existence at the time their debts were created. If these two sections of the code are required to fill the same measure, and that a measure furnished by principles of analogous reasoning, the transfer of personal property and the chattel mortgage are each void as to the same class or classes of creditors; and, in the absence of an express legislative enactment to the contrary, this court has no right to hold otherwise.

In a transfer of personal property there must be an immediate delivery; *ergo*, it is argued the chattel mortgage must have immediate recordation. Such a construction of the statute in numberless cases demands an impossibility. The statute says that a chattel mortgage must be recorded in the county where the mortgagor resides, and also where the property is situated. This express demand of the statute often requires weeks to carry out. It is impossible that the two recordations shall take place immediately, or even at the same time. Section 2962 of the Civil Code allows a chattel mortgage to be given upon personal property situated in different counties. It is impossible to see how such a mortgage could be recorded immediately. What would be said as to the immediate recordation of a chattel mortgage executed in the county where the mortgagor resides and where the property is situated, but one hundred miles distant from the recorder's office? If a mortgage of that character is to be declared void as to creditors because not recorded immediately, it is probable that such a conclusion would invalidate

recorded chattel mortgages in many counties of the state. Again, if a chattel mortgage may not be executed one hundred miles from the recorder's office because an immediate recordation under such circumstances would be impossible, then how near to the recorder's office must the execution of the mortgage take place in order that it may be recorded immediately? This interrogatory presents an interesting question and suggests a broad and fertile field for future litigation.

It is also insisted that a construction of the statute demanding an immediate recordation of a chattel mortgage is justified from general language found in *Berson v. Nunan, supra,* to the effect that the recordation of a chattel mortgage is an equivalent of the immediate delivery demanded by section 3440 of the Civil Code. There was no element of immediate recordation of the chattel mortgage involved in that case, and the court never for a moment thought it was declaring the law upon that important question when it used the language to which we are referred. The language used by the court was as clearly in point upon the case of a future recordation of a chattel mortgage as in the case of an immediate recordation. At that time the court was speaking of the effect of the recordation of the mortgage, entirely disconnected from any question as to the time of recordation. This is conclusively apparent when we find the court upon the very same page of the opinion declaring: "The object to be attained by requiring the recording of mortgages of personal property is the same as that in providing for the registration of mortgages of real estate. The same general principles are alike applicable in each case. The design is to give notice to the public of all existing encumbrances upon real or personal estate by mortgages." In view of this language *Berson v. Nunan, supra,* affords but a foundation of sand upon which to rest the weighty results flowing from this decision. As distinguished from *Berson v. Nunan, supra,* it is said in *Martin v. Thompson,* 63 Cal. 4, that the chapter of the Civil Code treating of mortgages of personal property "substitutes the record of a mortgage for the actual and continued change of possession in case of other transfers, required by section 3440. The purpose of the actual delivery in the one case, and of the record or registry in the other, is to give notice to those who

shall deal with the vendor or mortgagor." In speaking of the chattel mortgage act in *Beamer v. Freeman*, 84 Cal. 556, this court said: "This law substitutes the record of the mortgage for the actual delivery and continued change of possession made essential to effect transfers in other cases by section 3440 of the Civil Code." It would seem that the word "immediate" was intentionally omitted by the court in the language quoted in the two foregoing cases; and the language there used entirely and accurately expresses the law upon this question.

In conclusion it may be suggested that section 3431 of the Civil Code provides: "In the absence of fraud, every contract of a debtor is valid against all his creditors, existing or subsequent, who have not acquired a lien on the property affected by such a contract."

In this case there is no actual fraud. Neither is there any constructive fraud, for the law has not so declared. In the face of this provision of the statute it is impossible to see how the mortgagor's creditors have any rights as to the mortgaged property until they have first secured a lien upon it. In this case, before they took any steps to secure the lien the chattel mortgage was recorded.

For the foregoing reasons I dissent from the judgment.

Van Dyke, J., and Harrison, J., concurred in the dissenting opinion.