### SWIFT v. HIGGINS.

### In re HANNAH'S ESTATE.

### In re RENNER'S ESTATE.

#### No. 7241.

Circuit Court of Appeals, Ninth Circuit.
Sept. 5, 1934.

Reuben G. Hunt, of Los Angeles, Cal., and Jefferson E. Peyser, of San Francisco, Cal., for appellant.

Wm. H. Penaat and Edward F. Penaat, both of San Francisco, Cal., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

On April 1, 1927, George A. Renner gave Jesse D. Hannah a chattel mortgage on a barge, or floating pile driver, owned by Renner, to secure the payment of three promissory notes executed by Renner on March 1, 1926, aggregating $8,000. The mortgage was not recorded until April 29, 1927, and in the interim, between the date of execution and date of recordation, Renner incurred general indebtedness which has not been satisfied. During the life of the chattel mortgage, the barge was removed to another county and remained there for more than thirty days without being recorded in the new county, but was subsequently returned to the original county.

In December, 1927, Renner called a meeting of his creditors for the purpose of discussing the condition of his business. It was decided at that meeting that Renner would continue to operate his business under the supervision of a creditors' committee, and the business was so operated for about two years, but without success. Accordingly, in January, 1930, Renner made a general assignment of his assets for the benefit of his creditors.

April 2, 1930, an involuntary petition in bankruptcy was filed against Renner, and he was adjudicated a bankrupt on May 16, 1930. Thereafter appellee was appointed and qualified as trustee of Renner's estate.

In August, 1930, Jesse D. Hannah was adjudicated a bankrupt on an involuntary petition, and thereafter appellant was appointed and qualified as trustee of Hannah's estate.

March 1, 1930, within four months of Renner's bankruptcy, Renner executed and delivered to Hannah a new note for $8,507 as a renewal of the three notes of March 1, 1926, and concurrently executed and delivered to Hannah a new chattel mortgage on the barge, which mortgage was promptly recorded.

In October, 1930, appellant, as trustee of the mortgagee's (Hannah's) estate, filed a petition to reclaim from appellee, trustee of the mortgagor's (Renner's) estate, the property covered by the chattel mortgage executed April 1, 1927. Pending the petition, the property in question was sold by consent of the parties for $3,350, which sum is now held by appellee subject to the preferred claim of appellant, if such claim be found valid. It appearing that the mortgage of April 1, 1927, had not been promptly recorded as required by section 2957 of the Civil Code of California, and was for that reason void as to creditors, appellant, in March, 1931, filed an amended petition based upon the second mortgage, executed March 1, 1930, which mortgage conformed to all the statutory requirements and had been promptly recorded. Appellee answered that the second mortgage was a voidable preference under section 60 of the Bankruptcy Act (11 USCA § 96), and the referee so held, saying: " * * * The first mortgage set up was void as against the trustee for failure to promptly record it, and that thus being wholly void, the execution of a second mortgage within four months of

bankruptcy, when the bankrupt is actually insolvent to the knowledge of the mortgagee, the latter mortgage is also void."

Accordingly, the referee denied appellant's petition in reclamation, and approved his claim as a general unsecured claim.

The action of the referee was approved by the court below. This appeal is from that part of the order denying the right of appellant to reclaim in full the proceeds from the sale of the mortgaged property.

One of the contentions advanced by appellant in support of the petition in reclamation was that the taking of the new mortgage by Hannah in the place and stead of the earlier mortgage was a mere exchange of securities, and for that reason did not constitute an unlawful preference. In overruling that contention, the referee said: " * * * Under the statute and decisions of this state the first mortgage in this case, while valid between the parties, was not only void as to lien claimants arising before the new mortgage was taken but was void as to general creditors, even if they had not obtained a lien thereon until later, and that at the time the alleged exchange of securities was made, the mortgage given up being void as to general creditors did not afford a basis for a valid exchange of securities so as to prevent the transaction from being considered an unlawful preference; and that such right of such general creditor may be enforced by the trustee in bankruptcy who now has a lien on the property as of the date of the commencement of the bankruptcy proceedings."

In determining whether this exchange constituted a preference, the primary question is as to the status of an unrecorded chattel mortgage in California as it affects a general creditor.

■■ Is a chattel mortgage, under the law of California, valid as against a general creditor who has not acquired a lien on the mortgaged property until after its recordation, if the recordation thereof is delayed beyond a reasonable time for such recordation? The question was presented to the Supreme Court of California in 1899 in a case (Ruggles v. Cannedy, 127 Cal. 290, 53 P. 911, 912, 59 P. 827, 828, 46 L. R. A. 371) arising under the Insolvency Act of California, the transaction having occurred in 1893 before the National Bankruptcy Act was passed (1898). The decision of the Supreme Court of California was rendered by a divided court upon a rehearing after a decision rendered in department. It was held by the majority of the court that the belatedly recorded chattel mortgage was void as against general creditors, and that the assignee in insolvency could maintain an action for the recovery of the property from the mortgagee, notwithstanding that it had been previously held by the court that a creditor at large cannot set a chattel mortgage aside for want of record, if he has not first acquired an attachment lien or a judgment and levied an execution or acquired some special interest in the mortgaged property. The questions involved were stated thus by the court: "Two leading questions are thus presented: (1) Is a chattel mortgage, withheld from record beyond a time reasonably necessary for its prompt recordation, void against creditors whose claims have arisen between the date of its execution and the date of its recordation? (2) May such a mortgage be declared void at the instance of the assignee in insolvency on behalf of such creditors whose claims have been proved and allowed against the estate of the insolvent mortgagor?"

These questions were both answered in the affirmative. The answer depended upon a construction of sections 2955, 2957, and 3440 of the California Civil Code. The court said: " * * * In the case of the articles of personal property enumerated in section 2955 of the Code, recordation became a substitute for delivery and change of possession. The recording of the mortgage is therefore made by the Code the equivalent of an immediate delivery, and continued change of possession.' Berson v. Nunan, 63 Cal. 550; Martin v. Thompson, 63 Cal. 3.

"But here it is argued that, while the law makes recordation the substitute for an immediate delivery, it does not mean or require immediate recordation, but only provides that, when effected, recordation is the equivalent of immediate delivery and continued and actual change of possession. Considering that the law demands immediate delivery, and that recordation is but a substitute for it, it is not easy to see how an indefinitely delayed recordation may be said to take the place of an actual, immediate delivery. One being designed as a substitute for the other, what is the condition, in the one case, if the property be not immediately delivered? Indisputably, the mortgage is void as to creditors. What, then, is the condition in the other case for the indefinite period during which there has been no recordation? While recordation is lacking there is not only no equivalent for an immediate delivery, but there is no delivery at all. Recordation itself is the substitute for delivery.

"A prompt recordation most obviously takes the place of an immediate delivery, and a delayed recordation of a tardy delivery. How, then, can a recordation effected one year or ten years after the execution of the mortgage be said to be the equivalent of the delivery which by the law is required to be made with all reasonable dispatch? Even more untenable does this argument seem when consideration is had for the manifest policy of these laws. The very object of them all— the reason for their being—is to prevent secret liens upon and interests in personal property. * * *

"Of course, it is true in general that a creditor at large of the mortgagor cannot set aside a mortgage for lack of recordation, any more than can such a creditor set aside a sale void for want of immediate delivery. He must come first with his judgment lien, execution levy, attachment, or some other process or right by which he has acquired a specific interest in or claim upon the particular property. But since, as has been discussed, he may acquire this lien or right after recordation, and since, when acquired, the mortgage is void as to him, it makes little difference whether it be stated as the rule that the law requires immediate recordation, or whether it be said that, while it does not require immediate recordation, the mortgage is void as to creditors who have become such during the time recordation has been delayed. It is but a change in the form of words, while all of the legal effects are the same. * * *

"In this case the creditors had not obtained judgments against the mortgagor; nor, indeed, had they instituted any proceedings against him at the time he was adjudged an insolvent. After that judgment, by force of the insolvency act itself, they were prevented from resorting to any proceeding in law or equity for such purpose. They were limited to the presentation of claims in the insolvency court. This they did, and, when those claims were allowed and approved, the questions involved in them became res judicata. The presentation, allowance, and approval of the claim, while not in strictness a judgment, had much of the force and effect of a judgment, and was the only thing in the nature of a judgment which creditors so situated could obtain. For the purpose of enforcing their rights against fraudulent or void acts of the insolvent, it is the equivalent of a judgment. Roan v. Winn, 93 Mo. 503, 4 S. W. 736."

The significance of this decision by the majority of the court is emphasized by the dissenting opinion by Judge Garoutte and concurred in by Judges Van Dyke and Harrison. Judge Garoutte said: "I am satisfied that the provisions of the Code only mean that unrecorded chattel mortgages are void as to creditors who assert their claims by attachment or otherwise before a recordation is had."

This quotation leaves no doubt that the contention made in the case at bar was presented to the Supreme Court of California in Ruggles v. Cannedy, supra, and the court held in that case that, even after the belated recordation of the chattel mortgage, it remained void as to a general creditor in existence prior to such recordation, but, in order to avail himself of his right to set aside the mortgage, the general creditor must arm himself with a judgment lien, execution levy, attachment, or some other process legal or equitable. In that case the allowance of the creditors' claim in the insolvency proceedings was considered the equivalent of a judgment, and the assignee in insolvency was permitted to attack the mortgage on behalf of the creditor. The lien of the trustee in bankruptcy would be equally effective on behalf of the prior creditor to avoid the chattel mortgage, and the trustee, notwithstanding the recordation of the mortgage, would be entitled to assert its invalidity as to him.

It is pointed out in Ruggles v. Cannedy, 127 Cal. 290, 53 P. 911, 59 P. 827, 46 L. R. A. 371, supra, that recordation of a chattel mortgage which covers personal property permitted by the law of California to be mortgaged (Cal. Civ. Code § 2955) is analogous to, and has the same legal significance as, the continued and immediate change of possession required to validate a transfer of personal property, in default of which, by section 3440 of the California Civil Code, the transfer is void as to creditors.

The rights of creditors as against a conveyance of personal property deemed fraudulent in law under the provisions of section 3440 of the Civil Code of California is thoroughly established in California. Being void as to creditors, it is immaterial that a subsequent change of possession occurs. A creditor can still assert his right as against the purchaser or transferee notwithstanding the purchase was for a valuable consideration and that the purchaser eventually obtains possession. We quote from Watson v. Rodgers, 53 Cal. 402, decided in 1879 by the Supreme Court of California, as follows: "The Civil Code, § 3440, provides that 'every transfer of personal property other, etc., * * * is conclusively presumed, if made by a person having at the time the possession or con-

trol of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors, while he remains in possession,' etc. Paulsell was a creditor while J. D. Watson remained in the possession of the property, and that brings the case within the provision of the Code declaring the transfer fraudulent and void as to him. The Code does not limit the creditor to a seizure while the property remains in the possession of the person attempting to make a transfer of it, but its effect is to make the attempted transfer fraudulent, and therefore void, as against demands of a person who was a creditor during the time. It is claimed by the plaintiff that the Code only makes the sale void during the time that the property remains in the possession of the vendor, and thus subjects it to seizure during that time. But that is not the correct construction of the provision of the Code. It denounces the transfer as fraudulent and void, as against the claims of a creditor who is such creditor during any of the time that the person who made the transfer remains in possession, after a transfer which is not accompanied by an immediate delivery and followed by an actual and continued change of possession. Such a transfer being void as to the creditor, he may cause the property to be seized in the same manner as he might have done had there been no attempted transfer by the debtor." See, also, Berson v. Nunan, supra, and Martin v. Thompson, supra.

This doctrine was approved and reaffirmed by the Supreme Court of California in Brown v. O'Neal, 95 Cal. 262, 30 P. 538, 29 Am. St. Rep. 111. The case of Ruggles v. Cannedy, supra, is still the law in California, and there is nothing in the later case of Wolpert v. Gripton, 213 Cal. 474, 2 P.(2d) 767, relied on by appellant, to the contrary, while the conclusion of the Supreme Court of California in Noyes v. Bank of Italy, 206 Cal. 266, 274 P. 68, that the trustee in bankruptcy can avoid an improperly recorded chattel mortgage after belated seizure of the possession of the mortgaged property by the mortgagee, is in accord with the decisions we have cited above.

The test of a preference by an exchange of mortgage securities under the Bankruptcy Act is whether or not the mortgagee, by reason of the new mortgage, secured an advantage which would inure to his benefit in the bankruptcy proceeding. Remington on Bankruptcy, § 1707; Teshner v. Roome, 106

Or. 382, 210 P. 160, 212 P. 473. The applicable provisions of the Bankruptcy Act are as follows:

11 USCA § 96 (b), Bankruptcy Act § 60 (b): "If a bankrupt shall have * * * made a transfer of any of his property, and if, at the time of the transfer * * * and being within four months before the filing of the petition in bankruptcy * * * the bankrupt be insolvent and the * * * transfer then operates as a preference, and the person receiving it * * * shall then have reasonable cause to believe that the enforcement of such * * * transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

11 USCA § 96 (b), deals with a number of other matters which create preferences. Among these matters is the recordation of a mortgage or document where such recordation is required to give it validity. This phase of the subject has been a matter of frequent litigation, but the question in the case at bar depends in the first instance upon the validity of the new chattel mortgage made by the bankrupt within the four months preceding bankruptcy while he was insolvent and known to be insolvent. At that time a new note and mortgage was given to Hannah. The new chattel mortgage was executed, delivered, and recorded to secure the amount of the new note for $8,507, which was the amount secured by the unrecorded chattel mortgage executed by the bankrupt to Hannah in 1927.

It is clear that under the law of California the transfer, that is, the new chattel mortgage, gave the mortgagee a benefit which he did not theretofore possess, because, as we have shown, before the exchange, the mortgaged property was subject to attachment by the mortgagor's creditors because the chattel mortgage was not promptly recorded as required by law, nor could the belated recordation thereof have validated it as to existing general creditors. The new chattel mortgage which was promptly recorded was not subject to attack by the prior creditors of the mortgagor, and the mortgagee thereby secured an advantage.

The referee found that the mortgagor was insolvent at the time of giving the new mortgage, and that the mortgagee had sufficient information to put him on inquiry, which, since it would have resulted in his full appreciation of the situation had it been pursued, is sufficient to charge him with knowledge. The evidence in the record on this subject is

somewhat meager, owing to the fact that the question of the insolvency of the bankrupt on March 1, 1930, was not seriously questioned by the parties at the hearing. The bankrupt testified that on January 18, 1930, he assigned all his assets to John L. Stewart; that in December, 1927, he owed $27,272; and that after that time he operated at a loss under the supervision of a committee of his creditors. Mr. Hannah was present in 1927 when the bankrupt disclosed his financial difficulties to the committee of creditors. The findings of fact were concurred in by the District Court, and we cannot disturb them, there being substantial evidence to support them. Monson v. Hibler (C. C. A.) 24 F.(2d) 909; Neece v. Durst (C. C. A.) 61 F.(2d) 591; Woods v. Naimy (C. C. A.) 69 F.(2d) 892. The new mortgage, given within four months of the filing of the involuntary petition in bankruptcy and when the mortgagor was insolvent and the mortgagee had reasonable grounds for believing him insolvent, constituted a voidable preference under the Bankruptcy Act, since the effect of it was to deplete or diminish the assets in the estate of the bankrupt mortgagor which otherwise would be available for general creditors.

Order affirmed.